THE STATE OF NEBRASKA, EX REL. GEORGE H. ROBERTS, ATTORNEY GENERAL, v. GILES R. REEDER.

1. **Escheat.**   Upon the death of a tenant in fee with defect of heirs, the title and right of possession to the lands, and also to his personal estate, *eo instanti* vest in the state, and by the operation of the laws of this state all such estate, real and personal, immediately becomes and constitutes a part of the general school fund of the state.

2. ———: TITLE OF ADMINISTRATOR.   The administrator of the estate of such decedent can convey no title to such lands, and has no right of possession to the same to deliver.

3. ———: SCHOOL FUND: CONSTITUTIONAL LAW.   By the constitution the legislature are inhibited from diverting such school funds derived from escheats to any other special objects; and, therefore, the legislative act approved February 17, 1875, vesting in trustees the escheated estate of Henry Hooper, deceased, for a special purpose and object, is a nullity.

ORIGINAL application for mandamus.

*E. W. Thomas*, for the relator.

*Jefferson H. Broady*, for the respondent.

GANTT, J.

This case is originally brought in this court upon an application for a writ of mandamus. The application substantially states that one Henry Hooper died June 15, 1872, seized of the northeast quarter of section thirty-five, in township six north, range thirteen east, in Nemaha county, and that he was also possessed of certain personal property; that on the 11th of July, 1872, the defendant was, by the probate court of said county, duly appointed administrator of the estate of said deceased and entered upon the discharge of such trust; that afterwards he made settlement in the probate court of his administration of said estate, and that there remained in his hands a certain sum of money and some personal property belonging to said estate after payment of the debts thereof, and that after such settlement he received other sums of money belonging to said estate, which remain in his hands. It is further stated that by an act of the legislature, entitled " an act concerning the estate of Henry Hooper, of Nemaha county," approved February 17, 1875, certain persons, naming them, were appointed trustees to manage and take possession and charge of the property and assets of the said estate; and providing that the administrator of said estate deliver to the said trustees all the money and other property, and execute and deliver a deed of conveyance of the real estate of the said Hooper to the said trustees. And it is further stated that said " Hooper left no heirs, and no person or persons entitled to distributive shares of his property, and the whole thereof escheated and vested in

the state of Nebraska;" that the trustees accepted the trust conferred on them, and made demand on the defendant to deliver to them "all the money and other personal property belonging to the estate;    *    *    and that he should execute and deliver the deed of convey-ance of said real estate, as required by said act," which the defendant refused to do.   The statute referred to further provides that the trustees shall sell and dispose of said real estate, and make to the purchaser a deed therefor; and that all the money received by them belonging to said estate, shall by them be expended in the erection of a school building in Nemaha county, to be known as "The Hooper Memorial School."   It will be seen that the demand of defendant by the trustees is for all the personal estate and the execution and delivery of a deed conveying to them all the real estate of the said Hooper.

Now, if all this property escheated to the state, then it seems clear that both the title and the right of possession to all, real and personal, vested in the state; for there were no heirs to whom the property could be delivered by the probate court.   At the common law the escheat denotes an extinction of blood of the person last seized, whereby the title of the tenant in fee fails for want of heirs and imports a determination of the tenure, and hence the land resulted back, by a kind of reversion, to the grantor or lord of the fee.   But in our country no private person succeeds to the inheritance by escheat; and, therefore, in the event of such determination of ten-ure the reversion is to the state, by virtue of its sover-eignty as the ultimate proprietor of all lands within its jurisdiction.   At the time of the death of Hooper, sec-tion 3, article VI, of the constitution, declared that "all lands, the title to which shall fail from defect of heirs, shall revert or escheat to the state."   Hence, there can be no doubt that upon the death of the tenant in fee

with defect of heirs, the title and right of possession to the lands *eo instanti* vest absolutely and wholly in the state. This being the law, the administrator had no title to the lands to convey and no right of possession to the same to deliver; and, therefore, a writ commanding him to make title by deed of conveyance, or to deliver possession of the land, would be ineffective for any purpose whatever.

But, if the trustees have the right of possession to the land, and the defendant illegally and wrongfully deprives them of that possession, then, in such case, they have a "plain and adequate remedy in the ordinary course of law." But have the trustees, by virtue of the act referred to, acquired any title or right whatever to the real estate of which Henry Hooper died seized, or to the money and personal property of which he was possessed at the time of his death, or which accrued to his estate afterwards? We think this question must be answered in the negative. If Henry Hooper left no heirs at his death, then all his property, real and personal, immediately vested in the state; and by section three of an act entitled "An Act to increase the school fund in Nebraska by penalties, forfeitures, fines, unclaimed fees and estates," approved February 15, 1869, all the property immediately became and constituted a part of the general school fund of the state. And by the provisions of both the old and new constitutions, all the funds belonging to the state for educational purposes shall be deemed trust funds held by the state, and shall so remain forever inviolate and undiminished, and the interest and income arising therefrom shall be exclusively applied to support and maintain the common schools throughout the state.

Therefore, if the property of Henry Hooper escheated to the state, the same by operation of law, immediately upon his death, became and constituted a part of the general school fund of the state; and, by authority of the

constitution, it must forever remain there inviolate; and the legislature cannot by legislative enactment divert this fund to any other objects. The constitution, in express terms, inhibits them from doing so; and, hence, the act of February 15, 1875, is a mere nullity, and confers upon the trustees therein named no rights to or power over the estate of Henry Hooper. The writ of mandamus must be denied.

WRIT DENIED.