IN RE ESTATE OF JOHN O'CONNOR.
ADAMS COUNTY, APPELLEE, V. STATE OF NEBRASKA, APPELLANT.

FILED FEBRUARY 16, 1934. No. 28640.

*Paul F. Good, Attorney General* and *William H. Wright,* for appellant.

*Herman G. Schroeder, contra.*

Heard before GOOD and EBERLY, JJ., and MESSMORE, RAPER and YEAGER, District Judges.

YEAGER, District Judge.·
This is an appeal by the state of Nebraska from the judgment of the district court for Adams county, Nebraska, in which county the estate of John O'Connor was probated. The estate escheated to the state of Nebraska for want of heirs. The county of Adams contends that the state is liable for the payment of an inheritance tax. This is the only question in the case. The county of Adams was successful in the action in district court and the state of Nebraska has appealed to this court.

It appears that this case must be determined on the true meaning of the term "escheat." In early England or during the feudal period, escheat meant the falling back or reversion of lands to the lord of the fee upon the failure of heirs capable of inheritance under the original grant. In both England and the United States now, by escheat is meant the lapsing or reverting to the crown or the state as the original and ultimate proprietor of real

estate, by reason of a failure of persons legally entitled to hold the same.

Clearly the theory of the law in the United States, then, is that first and originally the state was the proprietor of all real property and last and ultimately will be its proprietor, and what is commonly termed ownership is in fact but tenancy, whose continuance is contingent upon legally recognized rights of tenure, transfer, and of succession in use and occupancy. When this tenancy expires or is exhausted by reason of the failure of the state or the law to recognize any person or persons in whom such tenancy can be continued, then the real estate reverts to and falls back upon its original and ultimate proprietor, or, in other words, escheats to the state.

This state has never departed from the accepted meaning and interpretation of escheat in the United States. In our first Constitution (Const. 1866, art. VI, sec. 3) it was provided: "All lands, the title to which shall fail from defect of heirs, shall revert or escheat to the people." This provision is no longer to be found in our Constitution, but in section 3, art. VII, escheat is recognized. Though the above quoted provision has been taken out of the Constitution, it has never been removed from the statutes, where it has remained unchanged since 1875. Section 76-501, Comp. St. 1929, being the provision referred to, is as follows: "Upon failure of heirs the title shall vest at once in the state, without an inquest or other proceedings in the nature of office found." It then becomes apparent that in this state by "escheat" is meant a reversion of title to the state upon failure of heirs.

Section 6622, Rev. St. 1913, contained the law providing for taxes upon inheritances. On account of its length we will not quote it here, but an analysis of its provisions clearly shows that what was intended was a tax upon a right of succession to property by inheritance, will, or by transfer made in contemplation of death, which is clearly distinguishable from a reversion, which can only take place where the title holder dies without will, without

heirs, and without having made a transfer of the property in contemplation of death.

The appellee urges that, since escheat is mentioned in the seventh paragraph of the statutes providing the order and method of distribution of real estate in intestate estates (Comp. St. 1929, sec. 30-102), the legislature must therefore have intended to classify the state as a beneficiary. With this contention we cannot agree. The effect of such a theory would be the restriction and abridgement of the right of reversion which it had from earliest times, which right has been declared by Constitution and statute in such manner as to leave no doubt of the intention to retain it unimpaired. Escheat is one of the incidents of our state sovereignty and it cannot be surrendered unless the intention so to do is clearly and unequivocally expressed.

There are other questions suggested in the record of this case; but, since this one is decisive of the issue presented, no useful purpose would be served in their discussion. The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.