EIFEL ANSTINE, APPELLANT, V. STATE OF NEBRASKA, DEPARTMENT OF BANKING AND RECEIVERSHIP DIVISION, APPELLEE.

288 N. W. 525

FILED NOVEMBER 17, 1939. No. 30684.

*Thomas J. Dredla* and *T. R. P. Stocker*, for appellant.

*Walter R. Johnson, Attorney General,* and *Rush C. Clarke, contra.*

*Clifford L. Rein* and *Charles F. Barth, amici curiæ.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

Eifel Anstine, on February 28, 1936, filed her petition against the state of Nebraska, department of banking, in the compensation court, to recover benefits under the workmen's compensation law, with præcipe attached, directed to the clerk of the compensation court to issue a summons for service upon the defendant as provided by law. Summons was issued and no return made thereon. The state of Nebraska, department of banking, by B. N. Saunders as superintendent, answered; the answer being signed by "F. C. Radke, C. G. Miles, Their Attorneys." An amended petition was filed by plaintiff, summons issued thereon and no return of summons made to the court. The answer to the

amended petition was signed: "State of Nebraska, Department of Banking, Receivership Division, Defendants, William H. Wright, Attorney General, Paul P. Chaney, Assistant Attorney General." Plaintiff's petition was dismissed May 24, 1937, by one of the judges of the Nebraska workmen's compensation court. A transcript was filed from the compensation court, containing a copy of the order of dismissal, stipulation and waiver of rehearing, and notice of appeal. The stipulation appears in the record in the workmen's compensation court, filed June 5, 1937, as follows: In accordance with section 48-174, Comp. St. Supp. 1937 (to which we refer), in the event of appeal of the case, it may be submitted to the district court for Lancaster county, to be heard and determined as a cause in equity and tried *de novo,* signed by F. C. Radke, Bert L. Overcash, assistant attorney general. A petition was filed by plaintiff in the district court for Lancaster county. The record does not disclose an issuance or return of summons, but a journal entry appears dated December 16, 1938, wherein the court found against the plaintiff and generally for the defendant. Motion for a new trial was filed and overruled, and notice of appeal given. The appellee filed a special appearance in this court, for the purpose of objecting only to the jurisdiction of the court over the person of this appellee, the state of Nebraska, department of banking.

It is conceded that the department of banking of the state of Nebraska is a governmental agency of the state, and that suit brought against such governmental agency is, in fact, a suit against the state, and it is also not questioned that the state cannot be sued in its own courts without its consent.

The voluntary appearance made by the attorneys representing the state of Nebraska and the department of banking is of prime importance. However, the appellee first raises a point in reference to the issuance and service of summons in the following language: That the compensation court had no jurisdiction for the reason that no service was ever had upon the state of Nebraska or the department

of banking. This proposition is of such general importance as to require discussion.

Subdivision 2, sec. 48-174, Comp. St. Supp. 1937, provides: "Upon the filing of such petition a summons shall issue and be served upon the adverse party, as in civil causes, together with a copy of the petition." Section 20-503, Comp. St. 1929, contains the requisites for a summons as in civil cases, and provides that it "shall be directed to the sheriff of the county, and command him to notify the defendant or defendants named therein that he or they have been sued."

Section 22, art. V of the Constitution of Nebraska, reads: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought."

A state may, of course, lay its sovereignty aside and consent to be sued on such terms and conditions as it may prescribe. The provision of the Constitution in relation to bringing of suits against the state (art. V, sec. 22) is not self-executing. Legislative action is necessary to make it available. See *State v. Mortensen,* 69 Neb. 376, 95 N. W. 831.

Appellee directs the court's attention to section 27-319, Comp. St. 1929, under the heading: "(b) Jurisdiction in Actions Against State," and more especially to section 27-321, Comp. St. 1929, which provides for the service of summons in suits against the state. Section 27-321, *supra,* designates how the summons will be served, as follows: When a petition is filed, summons shall issue and be served upon the state by the sheriff of the county where the petition is filed, "by serving the same upon the governor and attorney general; and in any action, the subject-matter of which, in whole or in part, relates to or grew out of the conduct of any special department or institution of the government, summons shall also be served by such sheriff upon the chief officer of such department or institution."

The compensation law contains no language designating upon what officers of the state service is to be had, in the

event the state is a party to the action. See section 48-174, Comp. St. Supp. 1937. Section 20-503, Comp. St. 1929, under "Commencement of Civil Actions," provides for the service of summons in ordinary civil cases. It will be noted that section 27-321, Comp. St. 1929, contains specific language as to how summons shall be served in actions against the state, such actions being provided for in section 27-319, Comp. St. 1929. The question presents itself as to the applicability of section 20-503, Comp. St. 1929, and section 48-174, Comp. St. Supp. 1937, to the facts as presented in this case.

"It is a general rule that the state is not bound by the general words of a statute, which, if applied, would operate to trench (encroach) on its sovereign rights, injuriously affect its capacity to perform its functions, or establish a right of action against it, unless the contrary is expressly declared or necessarily implied." 2 Lewis' Sutherland, Statutory Construction (2d ed.) 953, sec. 514.

It is obvious that section 27-321, Comp. St. 1929, does not apply, nor is said section made a part of the compensation act by express language or otherwise, but refers specifically to actions authorized by the state, as reflected by section 27-319, Comp. St. 1929, wherein the district court is made a forum for actions against the state. The use of the general language, "defendant or defendants," as appearing in section 48-174, Comp. St. Supp. 1937, and section 20-503, Comp. St. 1929, as constituting service against the state, would operate to encroach upon the state's sovereign rights, injuriously affect its capacity to perform its functions, and would establish a right of action against it in the manner which should not be permitted.

Referring again to the language contained in section 22, art. V of the Constitution, "in what manner," it is apparent that the legislature had not provided a proper manner of obtaining service upon the state in compensation cases. Section 48-174, Comp. St. Supp. 1937, uses this language, "or the voluntary appearance of a defendant is equivalent to service."

The question presented is: Can the attorney general, or his assistants, or attorney for the department of banking, or his assistants, bind the state by a voluntary appearance in a suit brought under the workmen's compensation act, wherein the state is a party defendant?

Section 84-205, Comp. St. 1929, defines the specific duties of the attorney general to appear and defend actions and claims against the state. Section 84-203, Comp. St. 1929, refers to the powers and duties of the attorney general as follows: "The attorney general is hereby authorized to appear for the state and prosecute and defend in any court or before any officer, board, or tribunal, any cause or matter, civil or criminal, in which the state may be a party or interest(ed)."

In *Custer County v. Chicago, B. & Q. R. Co.*, 62 Neb. 657, 87 N. W. 341, the county attorney entered a voluntary appearance on behalf of the county, and confessed judgment. His authority was a resolution of the county board, authorizing him to confess judgment against the county. The resolution did not authorize him to make a voluntary appearance. This court held that the judgment confessed, under such circumstances, was void. It was said (p. 661) : "Where there has been no service of process to give the court jurisdiction to render judgment by confession, the law requires the personal appearance of the party or of his attorney, acting under a warrant of attorney. Code of Civil Procedure, secs. 433-437."

The duties of a county attorney are defined in section 26-901, Comp. St. 1929, and correspond to the duties of the attorney general, as heretofore stated. Section 26-901 provides in part: "It shall be the duty of the county attorney, * * * to appear in the several courts of their respective counties and prosecute and defend, on behalf of the state and county, all suits, applications or motions, civil or criminal, arising under the laws of the state, in which the state or the county is a party or interested."

The case of *Custer County v. Chicago, B. & Q. R. Co., supra,* clearly held that, in the absence of a resolution by

the governing authority (in that case the county board), authorizing the act, the county attorney could not enter a voluntary appearance and bind the county thereby. If statutory enactments, setting forth the duties of the county attorney, are insufficient to permit him to appear and enter a voluntary appearance which would bind the county, then it logically follows that the duties of the attorney general, as prescribed by statute (Comp. St. 1929, secs. 84-203, 84-205), are not sufficient to authorize the attorney general to enter a voluntary appearance and bind the state, unless the governing power (the state), by legislative enactment, authorizes the attorney general to so enter a voluntary appearance in such case made and provided. The following Nebraska case supports the above analysis:

In *Chicago, B. & Q. R. Co. v. Hitchcock County,* 60 Neb. 722, 84 N. W. 97, the statute provided for service of process upon a municipal corporation under the provisions of section 57, ch. 14, art. 1, Comp. St. 1899. While required to be served upon the mayor, chairman of the board of trustees, or, in his absence, upon the clerk, etc., the chairman of the board of trustees and the city attorney entered a voluntary appearance. The court held: "A chairman of the board of trustees of a village defendant is not empowered to waive the issuance and service of summons, and to enter the voluntary appearance of the defendant in an action, without authority of the village board acting in its corporate capacity as a body politic." The court said in the opinion that the authority of the attorney and chairman of the board of trustees of a village to waive the issuance and service of summons in an action against the village, and thereby give the court jurisdiction to render a valid and binding judgment against the village, was the question to be determined. The court further said (p. 725): "There is certainly no direct authority for such action, nor does it appear to us to be based on any well recognized rule of construction to hold that such authority is lodged in a presiding officer of a municipal corporation (even though he be the officer upon whom service is required to be had) as

an implied power, under the different sections of the statute bearing on the subject. * * * The service contemplated in the foregoing section * * * is upon the corporation in its corporate capacity, and not upon an individual officer of the corporation. * * * The method by which jurisdiction over the village might be acquired was clearly pointed out in the statutes. * * * We think it a wholesome rule that, in obtaining judgments against a municipal corporation, the defendant shall be brought into court, either by a properly served process duly issued, or that in its corporate capacity it acts within the scope of the authority conferred upon it by statute, and in such manner as to show that the action taken is that of the corporation, rather than of an individual who may be a member of a body chosen to conduct the affairs of such corporation."

The following Oklahoma case presents the logical rule: In *Faught v. City of Sapulpa,* 145 Okla. 164, 292 Pac. 15, it was said (p. 183) : "In the absence of a statute authorizing the officers of a political subdivision of the state to waive the issuance and service of summons for that political subdivision, this court must hold that a court does not obtain jurisdiction over a political subdivision of the state by the waiver of the issuance and service of a summons by its officers." We know of no statute that authorizes the officers of a state to waive service of summons for a political subdivision thereof.

In 24 Standard Ency. of Procedure, p. 73, it is said: "The attorney general is commonly required to prosecute and defend all actions in which the state is a party or is interested. But he cannot waive the immunity of the state from suit and enter an appearance to make it a party defendant, unless statute authorizes him to do so." Cases cited under note 15.

In opposition to the foregoing, 59 C. J. 327, is cited, wherein it is said: "Where proceedings are authorized against the state but there is no express provision as to the service of process, the state may properly be brought into court by service upon the governor and attorney general,

or apparently either of such officers." We have examined the cases cited under note 62: *Port Royal & A. Ry. Co. v. State of South Carolina,* 60 Fed. 552, in which the state instituted the action and a cross-bill was filed against it. The court held that it was proper to serve the state by making substituted service upon the attorney general, by whom the cross-bill was filed. The distinction is apparent. In *State of Texas v. Cook,* 57 Tex. 205, the legislature permitted a judge of the criminal district court to institute a suit to determine what amount of salary, if any, was due him as a judge. No mode of service was prescribed, and the court held that service on the governor or attorney general is sufficient. There is a distinct difference between an action against the state, affecting the salary of one individual, and a compensation law affecting all of the employees of the state, and the liability of the state to pay compensation for injuries received in the course of employment. The other case, cited under note 62 above, is of no assistance in determining the question.

In *California Securities Co. v. State,* 111 Cal. App. 258, 295 Pac. 583, cited, the attorney general was permitted to voluntarily appear for the state. This was an action brought to recover a corporation license tax, paid by the company under protest to the secretary of state, sued in his individual and in his official capacity. We believe that the nature of the liability created against the state by the compensation law and its effect present an entirely different situation.

Our attention is called to the case of *Keil v. Farmers Irrigation District,* 119 Neb. 503, 229 N. W. 898, wherein it was said (p. 508): "The reference to the Civil Code is manifest. So far as applicable to the transaction, and not inconsistent with the workmen's compensation act, by the language quoted the terms of this Civil Code must be considered as part of the statute." The inapplicability of the rule announced in the *Keil* case to the instant case is apparent, for the reasons hereinbefore given. The *Keil* case, in which the language was used, applied to correction of a mistake in the summons.

Section 20-853, Comp. St. 1929, is cited. Said section provides: "The court in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." The foregoing section of the statute is not applicable. Substantial rights of the state would be materially affected by the failure of the legislature to properly provide for the issuance and service of summons in compensation cases, wherein the state would be liable, or where no provision of the statute is made authorizing the attorney general, or any of his assistants, to voluntarily appear.

We conclude that the legislature has failed to provide, as required by section 22, art. V of the Constitution of Nebraska, the manner in which service of process may be had against the state, or a department of the state government, in a compensation case, or upon what officers of the state service is to be had. We further conclude that there is no statutory provision authorizing the attorney general, as the law officer of the state, to enter a voluntary appearance, binding the state, in compensation cases.

The great weight of authority is that statutes should receive a broad and liberal construction, but howsoever worthy the end to be accomplished, courts may not amend statutes under their power to liberally construe them. Such power to amend is possessed only by the legislature, and to that authority the salutary reasoning of the court and the like argument of counsel in this case might be properly addressed.

The appellee in its special appearance contends that the state of Nebraska has never waived its sovereignty and consented to be sued in actions arising under the workmen's compensation act.

The workmen's compensation law was passed by the Nebraska legislature in 1913. Laws 1913, ch. 198. The title to the act reads: "An act prescribing the liability of an employer to make compensation for injuries received by

an employee in the course of employment. Modifying common law and statutory remedies, in such cases. Establishing an elective schedule of compensation. Regulating procedure for the determination of liability and providing methods for payments of compensation thereunder." Section 6 of the act reads in part: "The provisions of this act shall apply to the state of Nebraska and every governmental agency created by it." Comp. St. 1929, sec. 48-106. Section 14, ch. 198, Laws 1913, reads: "The following shall constitute employers subject to the provisions of this act:

"(1) The state and every governmental agency created by it." Comp. St. 1929, sec. 48-114.

Section 15, ch. 198, Laws 1913, reads in part:

"The terms 'employee' and 'workman' are used interchangeably and have the same meaning throughout this act; * * * and shall be construed to mean:

"(1) Every person in the service of the state or of any governmental agency created by it, under any appointment or contract of hire, express or implied, oral or written, but shall not include any official of the state, or of any governmental agency created by it, who shall have been elected or appointed for a regular term of office, or to complete the unexpired portion of any regular term." Comp. St. 1929, sec. 48-115.

Section 9, ch. 198, Laws 1913, provides in part: "If both employer and employee become subject to Part II of this article (Comp. St. 1929, secs. 48-109 to 48-115), both shall be bound by the schedule of compensation herein provided."

Section 48-172, Comp. St. Supp. 1937, reads: "All disputed claims for workmen's compensation shall be submitted to the Nebraska workmen's compensation court for a finding, award, order or judgment."

59 C. J. 303, is cited as follows: "It is usually said that statutes authorizing suit against the state are to be strictly construed, since they are in derogation of the state's sovereignty. Consequently, it is generally essential that the consent of the state to be sued be given expressly and by clear implication." See, also, *State v. Mortensen, supra.*

In the case of *O'Connor v. Slaker*, 22 Fed. (2d) 147, the court stated that Nebraska had, to some extent, waived its prerogative as to immunity from suit, discussing section 27-319, Comp. St. 1929, but that there was no statute in Nebraska expressly consenting, in its terms, that the state of Nebraska may be sued in the federal courts by a citizen of another state; that section 22, art. V of the Constitution, was not self-executing, and, to be effective, required action by the legislature. Therefore, if the state had not made the provision that citizens of another state might sue the state of Nebraska in federal courts, the state had not waived its immunity to suit.

"The legislative intent is the cardinal rule in the construction of statutes." *King of Trails Bridge Co. v. Plattsmouth Auto & Wagon Bridge Co.*, 114 Neb. 734, 209 N. W. 497; *City of Lincoln v. Nebraska Workmen's Compensation Court*, 133 Neb. 225, 274 N. W. 576.

"In construing a statute the legislative intent is to be gathered from the necessity or reason for its enactment, and its several provisions should be construed together, in the light of the general objects and purposes of the act, so as to give effect to the main intent. * * * *People v. City of Chicago*, 152 Ill. 546." *Kearney County v. Hapeman*, 102 Neb. 550, 167 N. W. 792.

In 59 C. J. 303, it is further said: "But a statute giving a court jurisdiction to hear and determine actions against the state is sufficient authority for the bringing of an action without any special statute expressly giving the consent of the state to be sued."

Appellee contends further that even though liability is created on the part of the state (see *Eidenmiller v. State*, 120 Neb. 430, 233 N. W. 447) there must be in each case a special or general statute waiving the immunity of the state, in addition to a statute creating liability, if none existed at common law. On this proposition appellee did cite cases wherein the state in each instance, by statutory provision, waived its immunity and consented to be sued. However, an act creating a liability against the state in favor of em-

ployees of the state, for injuries arising out of and in the course of their employment, is on an entirely different basis than the circumstances as occasioned in the cases cited by appellee. The language recited in the act, incorporating the state and every governmental agency thereof within the provisions of the act, is clear and unambiguous, and the legislative intent is adequately expressed to warrant this court in declaring the state intended to waive its sovereignty and give its consent to be sued in actions arising under the compensation law.

Other matters are raised in the special appearance and in the argument of appellee, which, in view of the foregoing, are not necessary to discuss.

For the reasons given in this opinion, the special appearance is sustained.

SPECIAL APPEARANCE SUSTAINED.