ANTONIN SEMRAD ET AL., APPELLEES, V. FRANTISEK SEMRAD ET AL., APPELLEES, STATE OF NEBRASKA, INTERVENER-APPELLANT.

104 N. W. 2d 338

Filed July 29, 1960. No. 34786.

*Clarence S. Beck,* Attorney General, and *Richard H. Williams,* for intervener-appellant.

*John E. Mekota, Dredla & Dredla,* and *Clarence C. Kunc,* for appellees.

*Gerald J. Hallstead,* referee pro se.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an appeal by the State from a judgment of the district court for Saline County dismissing its petition in intervention in a partition suit by which it sought an order confirming the escheat of certain lands to the State that were involved in such proceeding.

The record shows that James Semrad died intestate in Saline County, Nebraska, on September 14, 1954. He was a widower at the time of his death and he left no issue or parent surviving. He left surviving a number of heirs all of whom were nonresident aliens residing in Czechoslovakia. The lands in question do not lie within the corporate limits of any city or village, or within 3 miles thereof, and are not therefore within the exception contained in section 76-414, R. R. S. 1943.

Section 76-401, R. R. S. 1943, provides: "Upon the failure of heirs, the title shall vest at once in the state, without an inquest or other proceedings in the nature of

office found." It is further provided by section 76-402, R. R. S. 1943: "Aliens and corporations not incorporated under the laws of the State of Nebraska are prohibited from acquiring title to or taking or holding any land, or real estate, or any leasehold interest extending for a period for more than five years or any other greater interest less than fee in any land, or real estate in this state by descent, devise, purchase or otherwise, except as provided in sections 76-403 to 76-405." This section precludes a nonresident alien from acquiring or taking any title or interest in lands in this state by descent, devise, purchase, or otherwise, except as to such lands as are within the exceptions provided in the act. State v. Toop, 107 Neb. 391, 186 N. W. 371; Metzger v. Metzger, 108 Neb. 613, 188 N. W. 229. We point out that there is no evidence in the record of a treaty between the United States and Czechoslovakia affecting the rights of the parties.

By escheat is meant a reversion or forfeiture of property to the state upon the happening of a designated chance event or default. It is one of the incidents of state sovereignty and it cannot be surrendered unless the intention to do so is clearly and unequivocally expressed. A failure of heirs is ordinarily the event which brings about an escheat to the state, but others may be provided by statute. The law of escheat must be complied with strictly, otherwise it will not be enforced. It seems clear, under the provisions of section 76-401, R. R. S. 1943, that, on the death of a citizen who leaves only alien kindred, his real property that is not within any of the exceptions specified by statute reverts to and vests in the state at the death of such citizen without the necessity of affirmative legal action as evidenced by the words "without an inquest or other proceedings in the nature of office found."

After the death of James Semrad a petition for the appointment of an administrator of his estate was filed on October 28, 1954. An administrator was duly ap-

pointed and, on August 7, 1958, a decree of final settlement was entered by the county court of Saline County. By this decree the heirs of James Semrad were determined and the residence of each shown to be in Czechoslovakia. The decree further provided that said lands should be assigned subject to the laws of the state requiring that such lands be sold by such alien heirs within 5 years from September 14, 1954, the date of the death of James Semrad.

The record further shows that the Attorney General of Nebraska was served with notice of the probate proceedings. On June 28, 1955, the State by the Attorney General intervened, asserting a reversion to the State by escheat. On July 10, 1958, the Attorney General withdrew the State's petition in intervention. The contention is advanced that the State lost any rights it may have had because of the filing and subsequent withdrawal of the State's petition in intervention.

There are at least three reasons why this position cannot be sustained: (1) Because the Attorney General has no authority to waive the rights of the State or to consent to the alienation of the vested interest of the State which it acquired on the death of James Semrad. State v. Lancaster County Bank, 8 Neb. 218; Chicago, B. & Q. R. R. Co. v. Hitchcock County, 60 Neb. 722, 84 N. W. 97; Custer County v. Chicago, B. & Q. R. R. Co., 62 Neb. 657, 87 N. W. 341; Anstine v. State, 137 Neb. 148, 288 N. W. 525; State ex rel. Goodsell v. Tunnicliff, 169 Neb. 128, 98 N. W. 2d 710. (2) Because the real estate escheated and reverted to the State by operation of law on the death of James Semrad. State ex rel. Roberts v. Reeder, 5 Neb. 203; In re Estate of O'Connor, 126 Neb. 182, 252 N. W. 826. (3) Because that while the decree of heirship may properly adjudicate who are the children or next of kin of the deceased, it does not determine the title to real estate, and adverse claims involving the title to real estate cannot be litigated in the proceeding. Fischer v. Sklenar, 101 Neb. 553, 163 N. W.

861; In re Heirship of Robinson, 119 Neb. 285, 228 N. W. 852; Edington v. Paulsen, 131 Neb. 198, 267 N. W. 422; Lutcavish v. Eaton, 166 Neb. 268, 89 N. W. 2d 44.

The record further shows that two of the alien heirs of James Semrad, on June 29, 1959, filed a partition suit in the district court for Saline County to procure an apportionment of the land among the foreign heirs according to their respective interests therein and, in case an apportionment could not be had without prejudice to the rights of such heirs, then for the sale thereof and a division of the proceeds in accordance with their respective interests. The proceeding resulted in a sale of the property to Warren H. Cerny and Joseph F. Belohlavy for $20,500. The sale was confirmed on August 4, 1959. The referee closed the transaction with the purchasers on September 2, 1959, at which time the purchase price was paid and deeds delivered. On September 11, 1959, the State by its Attorney General, with leave of court, filed its petition in intervention asserting that the lands escheated to the State and praying that the title thereto be quieted in the State. On September 9, 1959, the purchasers moved for an order vacating the order of distribution in favor of the alien heirs, which the court sustained on September 22, 1959. The proceeds of the sale still remain in the hands of the referee pursuant to such order awaiting the final determination of the litigation.

Under the authorities hereinbefore cited, the lands in question escheated to and vested in the State on the death of James Semrad. The State has not been made a party to any action having the effect of divesting the State's interest therein. We necessarily conclude that the State is the owner of the lands involved and that the trial court erred in dismissing its petition in intervention.

It is the contention of the appellees that the words "upon the failure of heirs," contained in section 76-401, R. R. S. 1943, should be literally construed to mean when there are no heirs irrespective as to whether or

not they are competent to take as heirs and, where there are heirs even though they be nonresident aliens, the title does not vest immediately upon the death of the owner. We cannot accept this argument. The words "failure of heirs" contained in section 76-401, R. R. S. 1943, mean an absence of heirs competent to take by descent or devise. Construing the applicable statutes pari materia (sections 76-401 and 76-402, R. R. S. 1943), an alien heir who cannot take by purchase cannot take by descent or devise. If the Legislature had intended that an escheat to the state would occur only when there were no heirs, it would have been a simple matter to have so stated. By using the term "failure of heirs," it clearly meant an absence of heirs capable of taking by descent or devise.

Appellees further contend the sale of the lands, the delivery of the deeds, and the payment of the purchase price before the State asserted its claim of title by escheat, made the transfer of title by the referee valid. It is valid, they contend, because of the failure of the State to take legal action before a sale and conveyance of the land for value to a competent titleholder. We reiterate, however, that no action to establish the vesting by escheat is required when the case falls within section 76-401, R. R. S. 1943. It is only when alien heirs take some interest in land under the exceptions and provisos of the act that legal action is required to divest such interest upon a default. This is evidenced by the fact that section 76-408, R. R. S. 1943, provides "Whenever any such lands shall revert and escheat to the State of Nebraska, as provided in sections 76-403, 76-405 and 76-411," the county attorney shall proceed against the alien for the purpose of having the forfeiture declared. Appellees contend, however, that the original act used the words "as provided in this act" and that the Revisor of Statutes changed the meaning of the act in specifying sections 76-403, 76-405, and 76-411, R. R. S. 1943, in the 1943 revision. See Laws 1911,

c. 100, p. 365. The meaning of the act was not changed. To hold otherwise would render section 76-401, R. R. S. 1943, a meaningless provision. The acts governing escheats must be construed together and effect given to each provision if it is possible to do so. Section 76-408, R. R. S. 1943, clearly refers to the exceptions and provisos of sections 76-403, 76-405, and 76-411, R. R. S. 1943, and not to section 76-401, R. R. S. 1943, which provides for the vesting of title in the state without legal action. In any event, the Legislature reenacted section 76-408, R. R. S. 1943, in its present form when it adopted and included the questioned language in a general revision of the statutes. McGraw Electric Co. v. Lewis & Smith Drug Co., Inc., 159 Neb. 703, 68 N. W. 2d 608; Peterson v. Vasak, 162 Neb. 498, 76 N. W. 2d 420.

Appellees rely upon Lord v. Shultz, 115 Neb. 33, 211 N. W. 210, 62 A. L. R. 489, to support the foregoing contention. In that case a foreign corporation accepted deeds to 360 acres of land in full payment of a mortgage which it held on 200 acres of it. The foreign corporation then conveyed the 360 acres of land to the plaintiff in the action. It is clear that the title to the 200 acres of land upon which the foreign corporation had a mortgage could be held by the foreign corporation under the provisions of section 76-411, R. R. S. 1943, formerly section 5690, Comp. St. 1922, as the opinion indicates. Appellees contend that the holding of the conveyance of the 160 acres by the foreign corporation valid sustains the validity of the conveyance by the referee in the present case. The situations are not identical as the appellees contend. There is no provision in the statutes providing for an immediate vesting of the title when a foreign corporation purports to take the title, such as is found in section 76-401, R. R. S. 1943, upon a failure of heirs. No reference is made to foreign corporations in that section and necessarily it has no application to foreign corporations. The case is clearly distinguishable.

Appellees further contend that section 76-612, R. R. S. 1943, lends support to their contentions. This section provides a statutory standard for the examining of abstracts of title. It provides in part: "Where title to real estate was held by a foreign corporation or by an alien and it does not appear from the records that the state has instituted proceedings to take advantage of the statutory restrictions on holding of land by such parties and corporation or alien has transferred the title to one capable of receiving and holding it, the title examiner should pass the title." This provision applies to aliens who obtain an interest in land which is subject to reversion to the state upon default of statutory conditions attached to the holding of such interest. It does not even purport to aid a conveyance of title by an alien who never had any interest in the property which the alien purported to convey. It will be observed that as the land in question vested in the State on the death of James Semrad, the alien heirs never had an interest in the land and section 76-612, R. R. S. 1943, has no application since it in terms relates only to real estate held by an alien. The section necessarily applies only to real estate held by alien heirs under the exceptions and provisos of the escheat statutes.

Appellees contend that the delay of the State in filing its petition in intervention is fatal to its position. As we have heretofore stated, appellees had no interest in the land in question since it vested in the State on the death of James Semrad, by virtue of section 76-401, R. R. S. 1943. The attempt of appellees to partition or sell the land was, reduced to the simplest of statements, an attempt to partition and sell the property of the State. The State was not made a party to the partition suit and the court's judgment was void. A void judgment may be set aside by the court rendering it at any time, whether at or after the term at which it was entered. The judgment for the partition of the land being void, this court is required to set it aside on ap-

peal. The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.