BEATRICE MANOR, INC., APPELLEE, V. DEPARTMENT OF HEALTH, STATE OF NEBRASKA, ET AL., APPELLANTS.

362 N.W.2d 45

Filed February 1, 1985.   No. 83-869.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellants.

John R. Holdenried of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.
This appeal involves a February 13, 1980, application by the

plaintiff seeking permission from the Department of Health to build a 23-bed addition to a health care center facility for the elderly in Beatrice. The application was filed pursuant to the Nebraska Health Care Certificate of Need Act, Neb. Rev. Stat. §§ 71-5801 to 71-5872 (Reissue 1981).

This application was denied by the department by letter dated August 5, 1980, primarily because at that time there were 82 beds per 1,000 persons aged 65 years or older in Gage County, which greatly exceeded the then current Nebraska Health Systems Plan optimum of 68.6 beds. That decision was appealed by Beatrice Manor to the Nebraska Health Care Certificate of Need Appeal Panel created by §§ 71-5859 to 71-5866, which panel affirmed the original decision. That decision then constituted the determinations of the Department of Health, as provided for in § 71-5866.

Finally, Beatrice Manor filed a petition for judicial review in the district court for Lancaster County, as authorized by Neb. Rev. Stat. §§ 84-917 et seq. (Reissue 1981). The petition named as defendants the Department of Health of the State of Nebraska, the Nebraska Certificate of Need Appeal Panel, and the State of Nebraska. The district court reversed the previous orders and remanded the case to the Department of Health with directions to grant the application.

On appeal to this court the defendants assign as error: (1) The district court erroneously found that it had personal jurisdiction over the defendants; (2) The district court exceeded its scope of review; and (3) The district court incorrectly failed to find that the decision of the administrative agency was not supported by the evidence, was not arbitrary or capricious, and was not outside the scope of such agency's authority.

We deal first with the question of jurisdiction. Beatrice Manor was a "person aggrieved by a final decision in a contested case" within the meaning of § 84-917. It filed its petition for review as provided for in subsection (2) of that section. It perceived the named defendants as having been "parties of record" and made them parties to these proceedings for review. That subsection requires that "[s]ummons shall be served as in other actions . . . ." In an effort to comply with those requirements, the plaintiff caused summons to be served

on the director of the Department of Health, the chairman of the Certificate of Need Appeal Panel, and the Governor and Attorney General of the State of Nebraska. Special appearances were filed by each defendant and were overruled.

The defendants contend that the state is a necessary party to these proceedings. We have held that an agency which is charged with the responsibility of protecting the public interest, as distinguished from determining the rights of two or more individuals in a dispute before such agency, is a necessary or indispensable party in a judicial review of a proceeding such as this. *Leach v. Dept. of Motor Vehicles*, 213 Neb. 103, 327 N.W.2d 615 (1982).

It is also insisted by the defendants that a suit against an agency of the state is a suit against the state. *Anstine v. State*, 137 Neb. 148, 288 N.W. 525 (1939). They argue that because § 84-917(2) provides that "[s]ummons shall be served as in other actions," and we held in *Leach* that the procedure for service of summons on the Governor and Attorney General in certain types of actions is provided for in Neb. Rev. Stat. § 24-321 (Reissue 1979), there is therefore no provision for serving the State of Nebraska in judicial reviews of administrative orders. This, of course, would be an intolerable situation, although we agree that such a position finds some support in *Anstine*.

However, we point out that in *Leach* the state and other defendants objected because service was not had on the State of Nebraska, as provided for in § 24-321. What we did say was that because the director of the Department of Motor Vehicles as a person is charged with a statutory duty of protecting the public interest, and was served with summons, that did not make the review proceeding an action against the State of Nebraska within the meaning of Neb. Rev. Stat. § 24-319 (Reissue 1979).

Except for a decision in this case, the question is now moot because of the passage of 1983 Neb. Laws, L.B. 447, now Neb. Rev. Stat. § 25-510.02 (Cum. Supp. 1984), which provides for service of summons on the Attorney General in all cases in which the state may be made a party. However, for the purpose of this appeal we hold that the phrase "summons shall be served

as in other actions" means, as to the State of Nebraska, any statutory provision for such service on the state, regardless of the type of case, and including the method dictated by § 24-321. To the extent that *Anstine v. State, supra*, is in conflict with this holding, it is overruled.

The question remaining is whether the district court erred in reversing the decision of the Certificate of Need Appeal Panel. Subsidiary to this issue is whether the district court exceeded its scope of review by ruling on the validity of the criteria used by the Department of Health in reaching its decision on the plaintiff's application.

Answering the second question first, the district court did not exceed the scope of its review. Section 84-917(6) and subsection (b) thereof provide that in an appeal of a contested case the district court may reverse or modify an agency's decision if the substantial rights of the petitioner have been prejudiced by a decision which is in excess of the statutory authority or jurisdiction of the agency.

In order to assess the validity of an agency decision, the district court may need to consider the validity of the agency's criterion. In *County of Dodge v. Department of Health*, 218 Neb. 346, 355 N.W.2d 775 (1984), this court considered the validity of the agency's criterion in upholding the district court's reversal of the Nebraska Health Care Certificate of Need Appeal Panel's decision. The appeal panel granted a certificate of need to Memorial Hospital to purchase rather than lease nuclear medical equipment. We found that the appeal panel had adopted a criterion in assessing the cost effectiveness of leasing such equipment which was not required under the enabling statute or the rules of the department. This was impermissible.

[T]he Department of Health, by its interpretation of § 71-5853, has undertaken to incorporate into the Nebraska Health Care Certificate of Need Act a criterion not found in the statutory framework of the act itself. An administrative agency cannot use its rule-making power to modify, alter, or enlarge provisions of a statute which it is charged with administering. *Cray v. Kennedy*, 230 Kan. 663, 640 P.2d 1219 (1982). As a corollary to the foregoing, an administrative agency cannot interpret its rules and

regulations in such a manner so that self-interpreted rules and regulations contravene the statute which the agency is obliged to administer.

*Id.* at 354, 355 N.W.2d at 780.

We also found that where the criterion exceeded the agency's statutory grant of power, the reviewing court was free to discard it in considering the outcome of the case. See, also, *School Dist. No. 8 v. State Bd. of Education*, 176 Neb. 722, 127 N.W.2d 458 (1964). This power to review criteria in a contested case predates the acceptance of the Administrative Procedures Act. See *Board of Regents v. County of Lancaster*, 154 Neb. 398, 48 N.W.2d 221 (1951).

The state asserts that all questions of criterion validity must be brought as a declaratory judgment action under Neb. Rev. Stat. § 84-911 (Reissue 1981). This section provides in part:

(1) The validity of any rule may be determined upon a petition for a declaratory judgment thereon addressed to the district court of Lancaster County if it appears that the rule or its threatened application interferes with or impairs or threatens to interfere with or impair the legal rights or privileges of the petitioner. The agency shall be made a party to the proceeding. The declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question.

However, both the wording of this statute and its interpretation in case law indicate such a declaratory ruling is discretionary with the court. *Millard School District v. State Department of Education*, 202 Neb. 707, 277 N.W.2d 71 (1979). A court may refuse to enter a declaratory judgment where it would not terminate or resolve the controversy. *Millard, supra*.

In the present case a declaratory judgment as to the validity of the 68.6 ratio would not settle the controversy. Beatrice Manor would still need to pursue other litigation in order to have its application accepted. As in *Millard, supra*, the court need not aid such piecemeal adjudication.

Since the district court had the right to consider the validity of the agency's criterion, the greater question is, Were the findings of the appeal panel, based on that criterion, rightfully rejected by the district court in determining whether there was

substantial evidence to support the decision? We think not.

On appeal this court's de novo review is limited to considering whether the agency decision was supported by substantial evidence and whether the district court applied the proper criteria. *McChesney v. City of No. Platte*, 216 Neb. 416, 343 N.W.2d 925 (1984); *The 20's Inc. v. Nebraska Liquor Control Commission*, 190 Neb. 761, 212 N.W.2d 344 (1973); *County of Dodge v. Department of Health*, 218 Neb. 346, 355 N.W.2d 775 (1984); *Lambert v. Nebraska Cr. Vict. Rep. Bd.*, 214 Neb. 817, 336 N.W.2d 320 (1983).

> " '[S]ubstantial evidence' for purposes of administrative review, must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, and this is something less than the weight of evidence; and the possibility of drawing two inconsistent conclusions from evidence does not prevent an administrative agency's finding from being supported by substantial evidence."

*Weiner v. State ex rel. State Real Estate Comm.*, 214 Neb. 404, 406, 333 N.W.2d 915, 917 (1983); *Wright v. State ex rel. State Real Estate Comm.*, 208 Neb. 467, 304 N.W.2d 39 (1981).

> The substantial evidence standard of review of decisions of administrative agencies requires the reviewing court to search the entire record to determine whether, on the basis of all the testimony and exhibits before the agency, it could fairly and reasonably find facts as it did.

*Simonds v. Board of Examiners*, 213 Neb. 259, 263, 329 N.W.2d 92, 95 (1983).

In applying the substantial evidence standard, the reviewing court is not free to substitute its judgment for that of the appeal panel. See, *McChesney, supra; Scott v. State ex rel. Board of Nursing*, 196 Neb. 681, 244 N.W.2d 683 (1976).

The district court found that the criteria used by the agency was in violation of § 71-5857, which provides:

> All criteria established by the department shall distinguish between rural and urban areas as defined by population density to the extent that variable standards will benefit the development of the most appropriate health care system for the health service area.

The district court found that the 68.6-bed ratio made no distinction between rural and urban areas, and therefore the decision based on that criterion could not stand. As such, the decision went beyond the agency's statutory grant of authority and was not supported by substantial evidence. Upon closer examination this conclusion cannot be upheld.

The rules of statutory construction require that all parts of a statute relating to the same subject should be construed together. *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976). Looking at § 71-5857 in its entirety, the requirement of different standards in urban and rural areas is qualified. Different standards are required when doing so will benefit the health services of a given area. Agency rules then in force allowed for different standards, as necessary.

Both by rule and practice, the 68.6 ratio is not an absolute. As established in testimony, each area of the state has the option to adjust this figure to its own needs. The Southeast Nebraska Health Systems Agency (SeNHSA), which serves the area including Beatrice Manor, adopted 68.6 only after public discussion of its applicability to southeastern Nebraska.

Neb. Dept. of Health R. 33(5)(a)ii.B. (1980) allowed for individual exceptions even after adoption of the 68.6 ratio, where convincing evidence is shown that the criterion does not accurately reflect the needs of the population to be served.

Exceptions include a showing that the elderly population in a given area varies significantly from other areas; that there has been a population change in an area; that an area has a higher or lower morbidity or mortality rate; or that travel time and distance pose a problem in reaching nursing home facilities.

Viewing the evidence as a whole, there was no convincing showing that an exception to the 68.6-bed ratio should be granted.

The evidence disclosed that as of November 20, 1980, there were 20 residents in the Beatrice Manor service area (30 minutes' traveling distance) waiting for placement in the facility. However, none of these individuals was certified by a physician as needing placement, as required by the department. Only 2 of the 20 were the same names as appeared on a waiting list for the preceding summer months. Further, there was no

showing that these names did not also appear on the waiting lists of the other facilities in the area.

While the evidence showed that the nursing homes in the service area were operating close to capacity, that is as it should be. The state requires that a nursing home must operate at 90 percent of its capacity to maintain its license. Additionally, Beatrice Manor, as well as any other licensed home in the area, is free to expand its capacity either by 10 beds or 10 percent of its existing beds, whichever is less, without state approval. Here, Beatrice Manor is free to add six beds without official sanction.

The evidence presented by Beatrice Manor confused "need" and "demand" for nursing beds. Under the department's guidelines they are not synonymous. "Need" focuses on long-range plans to provide required services to an entire population. It is a quantitative analysis. "Demand" connotes an immediate preference on the part of an individual to live in a particular nursing facility.

An application which only demonstrates a demand without a need cannot be granted. Here, there was no showing by Beatrice Manor that the people on its waiting list required nursing home care or could not be serviced by alternate forms of care such as home nursing, day care, or "Meals on Wheels." Implementing alternate forms of care are part of the department's long-range effort to minimize the need for nursing homes so that they are not considered the only method for caring for the elderly.

Finally, Beatrice Manor urged in its application that a methodology other than the one used by the department be adopted in establishing the proper bed ratio. However, this court will not sit as a super administrative agency and substitute the methodology of an applicant over that developed after considered research by the department. Such would amount to a violation of separation of power. See *Scott v. State ex rel. Board of Nursing*, 196 Neb. 681, 244 N.W.2d 683 (1976).

As Beatrice Manor was not entitled to an exception from the 68.6-bed ratio, the findings based on that ratio should have been considered by the district court.

This court, in considering the findings, determines they are based on substantial evidence sufficient to uphold the decision of the appeal panel.

Under Department of Health rule 33 each application for a certificate of need is analyzed, using 10 criteria. Beatrice Manor's application failed to meet five of these.

Specifically, the application did not meet the needs in the community. The evidence demonstrated that, based on 1980 population projections, there was a need of 2,015 long-term care beds in the six-county area serviced by Beatrice Manor. However, 2,378 beds existed, with an apparent excess of 363 beds. In Gage County alone, where 284 beds were needed, 339 existed, leaving an excess of 55 beds. Most of the excess beds are intermediate-care beds. If the area needed more skilled nursing beds, any number of the excess could be relicensed as such.

Additionally, the service area would not benefit greatly from the addition. At the time the appeal panel met, the evidence indicated that only eight of the residents at Beatrice Manor came from outside Gage County. The new addition would cater primarily to Gage County.

Second, the beds requested exceed the projected number of beds needed to meet the need in the service area. The 68.6-bed ratio established by the state and adopted by SeNHSA was discarded by the applicant as inappropriate. However, other than showing a waiting list of individuals interested in using the facility, there was no convincing evidence of need to the extent that the 68.6 ratio should be disregarded. While Nebraska does have a higher percentage of elderly than most other states, the 68.6-bed ratio reflects that increase. This ratio is consistent with other states having a similar percentage of elderly in rural areas.

Further, the population in Gage County has decreased in the last 10 years. In fact, the migration trends for Gage County show a net loss of elderly needing a nursing home for the years preceding the application. Nothing in the evidence indicates that the present system could not adequately care for the needs of the present population.

Third, the proposed project does not satisfy an identified need for intermediate-care beds in the service area, for the reasons already set forth.

Fourth, there was insufficient evidence to establish that the applicant's plan was the best alternative to solve any existing demand for health care services. There was no information

about the individuals on the waiting list to demonstrate they required nursing beds rather than in-home services.

Finally, the cost factors weighed against implementing the project. The capital cost of $296,331 would be reasonable if there was a need. However, no need was established. Further, in order for Beatrice Manor not to lose its reimbursement funds, it must maintain an 85-percent occupancy rate. In order to do that it would have to keep 11 or 12 of the new beds filled at all times. This would be difficult, considering demand is so much lower in the summer months than in the winter.

In conclusion, the district court erred in rejecting the findings of the appeal panel based on the 68.6-bed ratio criterion. Had the findings been considered, there was substantial evidence to support the panel's decision not to grant Beatrice Manor's application.

The decision of the district court is reversed, and the cause is remanded with directions to affirm the decision of the appeal panel.

REVERSED AND REMANDED WITH DIRECTIONS.