BETHESDA FOUNDATION, A NEBRASKA NONPROFIT CORPORATION, APPELLANT, V. NEBRASKA DEPARTMENT OF SOCIAL SERVICES, APPELLEE.

498 N.W.2d 86

Filed April 2, 1993.   No. S-90-1159.

Robert L. Lepp and Howard N. Kaplan, of McGill, Gotsdiner, Workman & Lepp, P.C., for appellant.

Don Stenberg, Attorney General, Royce N. Harper, and James Hatheway for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and GRANT, J., Retired.

BOSLAUGH, J.

The plaintiff, Bethesda Foundation, is a Nebraska nonprofit corporation organized for the purpose of operating hospitals

for the general public and nursing homes for aged and infirm persons. It is a tax-exempt charitable organization. Prior to September 30, 1988, Bethesda owned and operated 12 nursing homes in Nebraska known as Bethesda Care Centers. Bethesda also operated a leased nursing home in Nebraska known as Grandview Manor. The plaintiff operated all of these facilities as licensed long-term-care facilities in accordance with and under the laws and regulations of the State of Nebraska and the Nebraska Department of Social Services. The facilities were certified by the department as providers of long-term-care service under 42 U.S.C. § 1396 (1988).

All at times prior to September 30, 1988, Bethesda and each of the facilities entered into one or more written contracts with the department to provide long-term-care services to medicaid recipients, and accordingly, each facility was entitled to reimbursement as provided in the Nebraska state plan for determining long-term-care reimbursement and the Nebraska regulations codifying the plan. These contracts stated that the policies and procedures of the department in the administration of the medicaid program would be followed.

The medicaid program is a cooperative federal program which the United States, by and through the Health Care Financing Administration of the U.S. Department of Health and Human Services (HHS), supervises and which partially provides funds to the states for medical assistance payments to needy people. See Social Security Act title XIX, 42 U.S.C. § 1396. Each state must submit to the Secretary of Health and Human Services for approval a plan that conforms to the requirements of 42 U.S.C. § 1396a (1988) and the implementing regulations issued by HHS.

Section 1396a(13)(A) provides that a medicaid plan must provide for payment "which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations . . . ."

The Nebraska Department of Social Services is responsible for the administration of the medicaid program pursuant to

Neb. Rev. Stat. § 68-1018 et seq. (Reissue 1990). In administering the program, the department reimburses medicaid-certified nursing home facilities for the cost of care to medicaid-eligible patients. The department determines payment or reimbursement rates for a nursing home based on allowable costs incurred by the facility.

Payment for long-term-care services is set forth in 471 Neb. Admin. Code, § 12-011 et seq. (1987). Rates paid to long-term-care providers must be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities to provide services in conformance with state and federal laws, regulations, and quality and safety standards." 471 Neb. Admin. Code § 12-011.02.

Since October 17, 1977, the Nebraska medicaid program has recognized depreciation as an allowable cost. The regulations also provide for the recapture of depreciation upon the sale of a long-term-care facility for a profit.

> Depreciation in 471 NAC 12-011.08D refers to real property only. A long term care facility which is sold for a profit and has received NMAP payments for depreciation, shall refund to the Department the lower of -
>
> 1. The amount of depreciation allowed and paid by the Department between July 1, 1976, and the time of sale of the property; or
>
> 2. The product of the ratio of depreciation paid by the Department since July 1, 1976, to the total depreciation accumulated by the facility (adjusted to total allowable depreciation under the straight-line method, if any other method has been used) times the difference in the sale price of the property over the book value of the assets sold. . . .

471 Neb. Admin. Code § 12-011.08D.

Prior to March 30, 1988, Bethesda notified the department of its pending sale of its 12 nursing homes in Nebraska to MTC West, Inc. On March 30, 1988, the department notified Bethesda of its estimate of the amount owed by Bethesda for depreciation recapture. The department's final computation was that $662,599 of depreciation payments made to Bethesda

since October 17, 1977, was to be recaptured as a result of the gain on the sale of the nursing homes.

On September 30, 1988, the closing date for the purchase of the nursing homes, Bethesda paid, under protest, $662,599 to the department as recaptured depreciation. Immediately thereafter, Bethesda filed a timely request for an administrative appeal.

On December 28, 1989, the director of the department found that the action of the audit division was correct and that the plaintiff was required to pay the department $662,599 as reimbursement for depreciation claimed in the operation of 11 of the facilities which had been sold for a profit.

Upon appeal to the district court, the order of the director was affirmed. From that judgment the plaintiff has appealed to this court.

In summary, the plaintiff has assigned as error the district court's determination that the department's implementation of the medicaid recapture regulation did not violate Neb. Const. art. VIII, § 2, as a tax on a tax-exempt charitable organization; that the department's implementation of the medicaid recapture regulation was not an unconstitutional violation of the separation of powers of state government; that the department's administration of the medicaid program did not violate the Equal Protection Clause of the U.S. Constitution; that the medicaid recapture regulation did not violate the Due Process Clause; and that the department applied the medicaid recapture regulation properly.

In Bethesda's first two assignments of error, it is argued that the depreciation recapture is a tax and therefore violates Neb. Const. art. VIII, § 2, providing for tax-exempt status for charitable organizations, and the separation of powers doctrine. Bethesda asserts the depreciation recapture is a tax because long-term providers who sell their facilities for a gain are not reimbursed for their actual depreciation costs when they are required to pay depreciation recapture. Accordingly, Bethesda contends that since it was not reimbursed for its actual depreciation cost, the recapture payment shifts that cost from the department back to Bethesda.

Depreciation is based on an inexact estimate of an asset's

consumption, and determining what consumption has actually occurred is difficult. *Creighton Omaha Regional Health Care v. Sullivan*, 950 F.2d 563 (8th Cir. 1991). Therein, the U.S. Court of Appeals for the Eighth Circuit upheld the HHS regulation providing for the recapture of unearned depreciation expenses paid to a medicare provider when the sale of the provider's assets exceeded the assets' book value. The court agreed with the HHS Secretary's interpretation that to the extent an asset has not lost value, the provider has not incurred an actual cost.

We agree with the Eighth Circuit's interpretation of the purpose of depreciation recapture and find that it is not the equivalent of a tax. Accordingly, Bethesda's first two assignments are without merit.

Bethesda argues that the department's implementation of the depreciation recapture regulation violates the Equal Protection Clause of the U.S. Constitution because it arbitrarily, capriciously, and without rational justification treats similarly situated buyers and sellers of health care facilities in Nebraska differently and because it is imposed upon only those long-term providers who sell their facilities at a gain, without making a similar adjustment to those providers who do not sell their facilities at a gain.

> In the absence of interference with a "fundamental right" or discrimination against a "suspect" class, a classification within or by a statute and resultant disparate treatment or effect on similarly situated individuals will be upheld against an "equal protection attack" if the classification is rationally related to a legitimate governmental purpose.

*Willis v. City of Lincoln*, 232 Neb. 533, 541, 441 N.W.2d 846, 851 (1989).

In this case, no fundamental right or suspect class is at issue. All long-term nursing home providers who voluntarily participate in Nebraska's medicaid program are subject to the depreciation recapture regulation. That is merely a condition of participation in the medicaid program.

When a provider sells its assets at a gain, depreciation is recaptured to the extent that the asset has not lost value and the

provider has not incurred an actual cost. See *Creighton Omaha Regional Health Care v. Sullivan, supra.* This is not an arbitrary, capricious, or irrational regulation. *Id.*

Bethesda next contends that the department's recapture regulation violates its right to due process under the law because prior to December 1, 1984, a provider who owned a long-term-care facility for 10 consecutive years or more could avoid the recapture of depreciation upon the sale of the facility. Since many of Bethesda's facilities had been owned for 10 years prior to the department's revision of the depreciation policies, Bethesda claims the change of the regulation retroactively removed a vested right and benefit contracted and relied upon by Bethesda until the time of the sale of the facilities.

Bethesda and each of its facilities entered into contracts with the department to provide long-term care. The contracts stated that the policies and procedures of the department would be followed.

This court has previously determined that the department's change in its depreciation recapture regulation did not have a retroactive effect and therefore could not violate a provider's right to due process. See *H.H.N.H., Inc. v. Department of Soc. Servs.*, 234 Neb. 363, 451 N.W.2d 374 (1990). Bethesda is not entitled to conclude that its depreciation reimbursement was not subject to being recaptured upon the sale of its facilities, and it did not have a constitutionally protected property right in those reimbursements.

Finally, Bethesda argues that the department applied its depreciation recapture regulation improperly because it did not consider the effect of inflation and market forces in determining the amount of depreciation to be recaptured.

The Eighth Circuit Court of Appeals has concluded, with the majority of U.S. Courts of Appeal addressing this issue, that "it is a valid implementation of the statute to recapture the difference between the sale price and the net book value, even though this gain may be due to inflation or market forces." *Creighton Omaha Regional Health Care v. Sullivan*, 950 F.2d at 565.

As this court stated in *Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985), we do not

function as a super administrative agency and will not substitute Bethesda's methodology for that developed by the department. "Such would amount to a violation of separation of power." *Id.* at 149, 362 N.W.2d at 52.

The judgment of the district court is affirmed.

AFFIRMED.