Howard HEGGEN, Plaintiff and Respondent,

v.

Mabel MARENTETTE, formerly Mabel Leer, Glen Humphrey, Louise Humphrey McManus, also known as Lois McManus, and Marion Humphrey Howard, Defendants and Appellants.

No. 3238.

Supreme Court of North Dakota.

June 30, 1966.

Rehearing Denied Aug. 16, 1966.

William R. Tschetter and Phyllis A. Ratcliffe, Watford City, for appellants.

Bjella, Jestrab, Neff & Pippin, Williston, for respondent.

ERICKSTAD, Judge (on reassignment).

The plaintiff, Howard Heggen, brought an action to quiet title to the Southeast Quarter of Section 10, the Southwest Quarter of Section 11, and the North Half of Section 15, all in Township 150 North, Range 101 West of the Fifth Principal Meridian, situated in McKenzie County, North Dakota. In his complaint he alleged that he had a fee simple interest in the property and that he was entitled to the immediate possession thereof.

The defendant McKenzie County failed to answer the complaint.

The other named defendants, Mabel Marentette, formerly Mabel Leer, Glen Humphrey, Louise Humphrey McManus, also known as Lois McManus, and Marion Humphrey Howard, in their answer generally denied the allegations of the complaint and alleged that they together claimed a ⅔ undivided interest in the property and that their interest is as tenants in common with Mr. Heggen.

In their counterclaim they asserted that they and Mr. Heggen are the owners in fee simple and are in actual possession of the real estate described in the complaint and of Lots 1 and 2 of Block 6 and Lots 7 and 8 of Block 2 of the original townsite of Rawson in McKenzie County. They alleged that Mr. Heggen had been in possession of the land during the years 1954 through 1961 as a tenant in common, that he was still in possession of the premises, and that he had retained all of the income from the property and had paid none of it to the defendants. They alleged that the property was so situated that a division of it could not be made without gross injury and prejudice to the owners.

In their prayer for relief they asked that the plaintiff's claim be dismissed and that they be granted judgment on their counter-

claim for a partition of the real estate; or, if a partition could not be had without material injury to the owners, that a sale of the premises be ordered and that the proceeds thereof be divided among the parties according to their respective rights; and that an accounting be ordered and proper payment be made by the plaintiff. Lastly, they asked that the costs of partition, including counsel fees and all other expenses incurred by the defendants for the benefit of all, be fixed by the court and ordered paid by the parties entitled to share in the lands, or that the lands be charged with these costs and fees proportionately.

In the plaintiff's amended reply to the answer and counterclaim of the defendants, he denied that the defendants had any right, title, or interest in the property and, in a number of defenses, he asserted his legal reasons in support of his contention that he was entitled to have the title of the property quieted in him.

The trial court found for the plaintiff and ordered judgment accordingly. It is from the judgment entered pursuant to this order that the named individual defendants have appealed, demanding trial de novo.

■ The respondent, Howard Heggen, contends that the defendants are not entitled to a trial de novo. He contends that the demand for trial de novo was contained only in the notice of the appeal. This is not the case. An examination of the order settling the statement of the case discloses that the order incorporates a demand for trial de novo. Accordingly, we are required to try the case anew. See Syllabus 1, Renner v. Murray, 136 N.W.2d 794 (N.D. 1965).

The material facts do not appear to be in conflict.

For purposes of discussion of the issues, we need trace the chain of title to the Southwest Quarter of Section 11 and the North Half of Section 15 back only to Neils Heggen and the chain of title to the Southeast Quarter of Section 10 back only to John Heggen.

Neils Heggen died intestate in 1930, leaving his wife Maren and his son John surviving him. John died intestate in 1936 and Maren died intestate in 1940. John's wife Otilda preceded him in death in 1920. Title to the land descended to the children of John Heggen, namely, the plaintiff herein, Howard Heggen, his brothers Neil Heggen, Norman Heggen, and James Heggen, and his sisters Mabel Heggen, Inga Heggen, and Stella Heggen, so that they each became owners of an undivided $\frac{1}{7}$ interest as tenants in common of this property.

It should be noted that the parties stipulated that Inga Heggen died in 1932. If this is true, on her father's and grandmother's deaths her two children acquired the undivided $\frac{1}{7}$ interest which otherwise would have descended to her.

Neil, Norman, James, and Stella have each conveyed their interest in the property to Howard. Thus, through inheritance of an undivided $\frac{1}{7}$ interest and by conveyances of an undivided $\frac{4}{7}$ interest, Howard has acquired an undivided $\frac{5}{7}$ interest in the property.

Heirship proceedings initiated by Howard purport to distribute the $\frac{1}{7}$ interest that would have descended to Inga, had she survived her father and grandmother, to her surviving husband Glen Humphrey and her two daughters Louise Humphrey McManus and Marion Humphrey Howard. So that the issues raised by respective counsel and parties may be more fully discussed, we shall assume that the stipulation as to Inga's date of death is in error and that the decree was correct in this respect.

Mabel Heggen, who owned an undivided $\frac{1}{7}$ interest, is now married to Steve Marentette, who is also known as Steve Leer. Unless these parties have lost their interests in this property, Mabel Heggen Marentette would now be entitled to an undivided $\frac{1}{7}$ interest, and Glen Humphrey, Louise Humphrey McManus, and Marion Humphrey

Howard would each be entitled to an undivided ½₁ interest.

Howard Heggen contends that he is entitled to have full title to all four quarter sections of land quieted in him. He asserts as reasons therefor the following: He took possession of the Southeast Quarter of Section 10 in the spring of 1941 and has continued in possession ever since. He has cropped it, paid taxes on it up to the time of this lawsuit, and has improved the soil by following soil conservation practices. He has retained all of the income, and no demands for a division of the income have been made upon him during this period of time. He has leased the land for oil and gas purposes and retained the rentals therefrom; he has repaired the fences and annually picked the rocks on the land; he has built and erected on the premises a quonset building costing $5,000.

He has possessed the Northeast Quarter of Section 15 in the same manner except that he has not constructed a building on it.

Howard's testimony as to how he acquired these two quarter sections of land is as follows:

Q. Now as to these other two quarters of land, that would be the Southeast of 10 and the Northeast of 15, how did you acquire those?

A. I just moved onto them.

Q. Well, did you ever buy them from anybody?

A. No.

Q. You didn't ever purchase that from anybody?

A. Nobody chased me off neither.

Q. You never received any deed, did you?

A. Only I have got them there, quitclaim deeds (indicating).

Q. Except for those deeds and those are not recorded?

A. That's right.

Q. In other words, you didn't get any deed from the County or any instrument of conveyance on those other two portions of land?

A. That's why I'm here today.

THE COURT: These are the tracts that you paid up taxes on back in 1930?

A. Yes.

Q. (By Mr. Tschetter) And those particular portions are your grandfather's land beforehand?

A. Yes.

Q. And you just went in and paid those taxes?

A. Yes. Well, it was going to be lost for taxes anyway.

Q. But you did pay those taxes up and that was it and then you moved on right away?

A. Yes.

THE COURT: I thought you testified that the County had taken title to those two tracts?

A. They were about to.

THE COURT: I see. You testified the opposite a little earlier.

A. You had me confused.

By auditor's tax deed dated October 1, 1940, McKenzie County acquired title to the Southwest Quarter of Section 11. On February 13, 1943, Howard wrote a letter to the Board of County Commissioners of McKenzie County as follows: "I hereby offer the sum of $849.41 for the repurchase of the SW¼, Sec. 11, Twp. 150, Rge. 101 on contract terms, I am one of the heirs of the Neils Heggen Estate. Yours very truly, (signed) Neils Heggen Estate by Howard Heggen."

A "Contract for Deed in Redemption of Real Estate" for the Southwest Quarter of

Section 11 was entered into on February 13, 1943, by the County Commissioners of McKenzie County as first party and Howard Heggen for the Estate of Neils Heggen as second party. This contract was signed by the party of the second part as "Neils Heggen Estate by Howard Heggen." When the contract on this quarter section of land was fulfilled, the County executed a county deed on November 1, 1944, wherein the grantee was described as "Neils Heggen, Rawson, North Dakota." At that time Neils Heggen had been deceased for fourteen years. The deed was sent to Howard Heggen, with a letter which said: "We enclose herewith your deed to the above described land. If you wish to have this deed recorded, mail it to the Register of Deeds with a fee of $1.50."

The County acquired title to the Northwest Quarter of Section 15 through an auditor's tax deed dated October 1, 1940. On January 27, 1943, the Board of County Commissioners of McKenzie County entered into a "Contract for Deed in Redemption of Real Estate" relative to this quarter section of land, wherein the vendee was described as "Howard Heggen for Estate of Neils Heggen." Howard Heggen, without reference to the estate, signed as party of the second part. When this contract was fulfilled, the County, on November 1, 1944, executed a deed in which Neils Heggen, Rawson, North Dakota, was named grantee. As with the other quarter section of land, a letter was sent by the county auditor's office to Mr. Howard Heggen, at Rawson, North Dakota, informing him that his deed was enclosed.

The Northwest Quarter of Section 15 and the Southwest Quarter of Section 11 were farmed in the same manner as the other two quarter sections of land, except that they were said to have been leased from the county the first two years.

It should be noted that the United States Department of Agriculture dealt with Howard Heggen as the owner of all four quarter sections of land in administering federal farm programs.

As previously stated, Howard entered into possession of the Northeast Quarter of Section 15 and the Southeast Quarter of Section 10 in the spring of 1941. The taxes were then delinquent back to the year 1930. He paid all of the delinquent taxes and has continued to pay the taxes on the premises up to the time of the lawsuit. He asserts that he thereby became a preferred purchaser of the land. Except for Howard's testimony that the county was about to take title to these tracts, there is no evidence that tax deed proceedings had been consummated. There is no proof that notice of the expiration of the period of redemption had been served. These tracts were never conveyed by deed to the county or to Howard. There is no contract in evidence indicating on what basis Howard may have paid these taxes.

The tax receipts are in evidence.

A statute in effect when Howard entered onto these tracts of land provided for contract settlement of delinquent taxes. The provision thereof pertinent to this discussion reads as follows:

The board of county commissioners may, upon application of any person owning property upon which taxes, either real or personal, are delinquent for the year 1937, or prior years, permit the payment of any such delinquent taxes, except special assessments levied for local improvements and special assessments levied by drainage or irrigation districts, on the reduced amounts hereinbefore provided for, in not to exceed ten (10) annual installments, without interest, at the rate of 4% per annum from April 1st, 1939, payable on or before October 15th of each year, provided that ten per cent (10%) of the principal is paid when the extension is allowed, ten per cent (10%), on the following October 15th, and ten per cent (10%) on each succeeding year until the amount is fully paid; and upon the pay-

ment in full of such installments, with accrued interest, such delinquent taxes shall be cancelled and discharged of record.

N.D.Sess.Laws 1939, ch. 227, § 1(3).

If it were to be said that the aforedescribed receipts infer such a contract settlement, we are still faced with the question of for whose benefit the contract settlement was entered into. Record title to these tracts was in the name of the deceased former owner, and thus title was in the heirs of the deceased former owner, subject to probate. Under these circumstances it appears to us that Howard entered into this contract settlement as a cotenant, if in fact there was such a contract.

Howard states that the last time anyone in any way related to the heirs of John Heggen or Neils Heggen other than himself farmed the land was when his sister Mabel's husband, Steve Leer, also known as Steve Marentette, tried to farm it, either alone or with his brother-in-law Neil Heggen, in 1936. He says that he was in possession of the land and farming it in 1941 when his sister and her husband left for the West Coast about the time of Pearl Harbor Day, and thus that they were aware that he had taken possession of the land, and yet neither they nor the other defendants ever made any claims upon him until the commencement of this action. An heirship proceeding was commenced in 1937 in the matter of the estate of Neils Heggen. This, as well as a proceeding for the appointment of a special administrator in the matter of the estate of Neils Heggen, was abandoned.

He argues that he further tried in good faith to clear title to the land by paying a claim against the John Heggen estate, which claim arose out of a note signed by Steve Leer, also known as Marentette, and cosigned by John Heggen, which was given in connection with the purchase of a tractor used by Steve Leer when he was attempting to farm the land back in 1936. He states that he paid this claim in the County Judge's

office in the presence of Steve Leer, who made no objections.

Howard lived in the buildings on the Northeast Quarter of Section 15 from 1941 to 1950. A friend and former neighbor, Selmer Ohnsager, testified that Howard had been in continuous possession of the premises since 1941, that he held himself out as owner, and was considered to be the owner of the land by all of the people in the neighborhood. This was corroborated by the testimony of another friend and neighbor, Alva Ensor.

In support of their contention that they are entitled to a judgment decreeing that they have together an undivided ⅔ interest in the land, the defendants argue that Howard did not purchase the Southwest Quarter of Section 11 and the Northwest Quarter of Section 15 in his own name, but that he purchased it on behalf of the heirs, as indicated by the fact that the estate was named as the grantee in each of the contracts, and that the deeds were finally issued in the name of Neils Heggen, who was then deceased.

They argue that Howard's intentions are more fully indicated by the fact that in 1953 he initiated heirship proceedings in the matter of the estate of Neils Heggen and in the matter of the estate of John Heggen, wherein as petitioner he asserted, in the one instance, that he claimed an interest in the Neils Heggen property because he was a grandson of Neils Heggen and was entitled to a ⅓ undivided interest in the property, and, in the other instance, that he claimed an interest in the John Heggen property because he was a son of John Heggen and was entitled to an undivided ⅓ interest in the property. In both of these petitions he set forth the interests of all of the other heirs, including the undivided interests of the defendants. In the process of the heirship proceedings, he signed the inventories, which listed the property now in dispute. The proceedings were completed and decrees were entered on March 10, 1954, which decreed to Howard

his undivided ½ interest and to the other heirs their respective interests.

The defendants contend that the only indication they had that Howard was claiming title adverse to them was when, in 1959, he told Mr. McManus (apparently the husband of the defendant Louise Humphrey McManus) that there wouldn't be any accounting made.

Howard testified that the heirship proceedings which he initiated were the result of a misunderstanding between him and his attorney, Helen Arildson. He testified that he asked Attorney Arildson to quiet title to the property and did not realize until he received the bill for her services that she had instead determined heirship. He cites in support of this contention the receipt which he received from Attorney Mullaney when he issued his check to Attorney Arildson for delivery through Attorney Mullaney, after Attorney Arildson had left the community. This receipt acknowledged that he paid the bill under protest.

He explained that he intended to purchase the Southwest Quarter of Section 11 and the Northwest Quarter of Section 15 for himself and not on behalf of the heirs. In an attempt to support this contention he called the former county auditor to testify on his behalf. The auditor was asked this question:

Can you explain then why the vendee was designated in the contract for deed as Howard Heggen, for the estate of Neils Heggen?

He replied:

Our policy was to restore the title where we found it.

No abstracts of title relating to the lots in the village of Rawson were received in evidence. Howard, however, contends that he is entitled to Lots 1 and 2 in Block 6, upon one of which is situated an old hotel building from which he has received a total of $25 in rent, having paid all of the taxes from the year 1930 to the time of this lawsuit.

He used the hotel as his home in town when he was not living in the buildings on the farm all through the 1940's.

There is nothing in the record concerning the use of the vacant Lots 7 and 8 of Block 2 of the original townsite of Rawson or the payment of taxes on them.

The four lots are, however, described in the heirship proceedings and are decreed in fractional interests consistent with the division made of the other land.

Paragraph 4 of the trial court's amended findings of fact reads as follows:

That Plaintiff, Howard Heggen, entered into possession of the SE¼ of Section 10 and the NE¼ of Section 15, all in Township 150 North, Range 101 West in the spring of the year 1941. That Plaintiff repurchased said lands as a preferred purchaser, for himself and no others. That Plaintiff, Howard Heggen, repurchased said premises by paying all real estate taxes levied and assessed against said lands for all previous years to and including the year 1930. That Plaintiff has paid all real estate taxes levied and assessed against said lands for each and every year since the year 1930 except real estate taxes for the year 1962 not yet due. That Plaintiff, Howard Heggen, has been in continuous possession of the SE¼ of Section 10 and the NE¼ of Section 15, all in Township 150 North, Range 101 West since the spring of the year 1941 and has continuously claimed a full fee simple interest therein. That he has cultivated and worked said land since the spring of the year 1941. That he repaired and maintained an old fence, picked rock, raised small grains upon the cultivated land, purchased, paid for and erected a 32 foot by 72 foot quonset building upon the land, leased said land for oil and gas on the 11th day of April, 1951; that he received and retained all bonus and delay rentals payable thereunder and that he and his family actually moved upon the land in the spring of the year

1941, living in and occupying said land and buildings and making his home thereon until the year 1950 when Plaintiff moved his residence to Alexander, North Dakota.

■ With part of these findings we cannot agree. In particular, we disagree with the finding that the plaintiff repurchased said lands as a preferred purchaser for himself and no others. We have previously set forth herein our reasoning in relation to this point, finding that Howard entered onto these two tracts as a cotenant.

The situation confronting us for decision is therefore quite similar to the situation with which we were faced in the case of Hagen v. Hagen, 137 N.W.2d 234, decided by this court in September 1965:

The plaintiff relies on certain evidence which he contends establishes his claim of adverse possession. He points out that he and his parents before him have been in possession for more than the statutory period required to establish adverse possession; that he and his parents cut hay upon a part of the premises, farmed a portion of such property, and received whatever income there was from such operations; that during such period neither the plaintiff nor his parents paid any rents; and that the plaintiff's parents and, after the death of his father, the plaintiff paid taxes on the property during such time. Plaintiff admits that when his father died, in 1956, the land in question was not included in the inventory as a part of the father's estate. He further shows that, in February of 1964, his mother gave to him a quitclaim deed conveying to the plaintiff any right, title, or interest she had in the property.

Hagen v. Hagen, supra, at 235.

■ The court, in stating the applicable rules of law, said:

* * * [A] tenant in common who enters into possession of the common land is presumed to be exercising the rights which he has as such tenant in common, and his possession is presumed to be consistent with the title that he holds as such common tenant. Mere possession itself and the payment of taxes is presumed to be for the benefit of all tenants in common, and the appropriation of rents and profits will not constitute adverse possession on the part of a tenant in common. Hare v. Chisman, 230 Ind. 333, 101 N.E.2d ʼ268; 86 C.J.S. Tenancy in Common § 26, p. 384.

While it is true that a cotenant may oust the other cotenants, such ouster cannot be accomplished except by acts so hostile to the rights of the others that his intent to dispossess such other cotenants is clear and unmistakable. Morrison v. Hawksett (N.D.), 64 N.W.2d 786; Ellison v. Strandback (N.D.), 62 N.W.2d 95; Smith v. Tremaine, 221 Or. 33, 350 P.2d 180, 82 A.L.R.2d 1.

* * * * * *

Thus, in order to support the plaintiff's claim of title to the entire estate in this case, there must be evidence to show adverse possession; there must be an ouster of the other cotenants, followed by possession for the entire statutory period. Such possession must be shown to be actual, exclusive, hostile, and with notice to the cotenants. Mere permissive possession by the plaintiff will not be presumed to be adverse, for possession by one cotenant is presumed to be in the exercise of his rights as a cotenant unless it is clearly shown that such possession is not only actual but is exclusive and hostile as well.

Hagen v. Hagen, supra, at 236.

Under the circumstances of that case, this court held that the evidence was insufficient to show adverse possession by the plaintiff for the statutory period. The facts of *Hagen* and of this case are very similar, and the rules applied in that case apply here.

■ Our view is that Mr. Heggen failed to establish that he had acquired a full title to the said two quarter sections of land by adverse possession. As to these two quarter sections he has established that he is entitled to an undivided 5/7 interest therein, and the defendants have established that together they are entitled to an undivided 2/7 interest therein.

Paragraph 5 of the trial court's amended findings of fact reads as follows:

That Plaintiff, Howard Heggen, entered into possession of the SW¼ of Section 11 and the NW¼ of Section 15, all in Township 150 North, Range 101 West in the spring of the year 1941. That for the years 1941 and 1942, Plaintiff, Howard Heggen was in possession and farmed said lands as tenant of McKenzie County, North Dakota. That in the year 1943, Plaintiff Howard Heggen redeemed said land from McKenzie County, North Dakota, continued in possession and ever since the year 1943 has paid all real estate taxes levied and assessed against said lands, and has continuously claimed a full fee simple interest thereon, under color of title. That he has cultivated and worked said land continuously since the year 1941. That he has picked rock, repaired and maintained fences, raised small grains upon the cultivated land and has leased the land for oil and gas on the 11th day of April, 1951, retaining all bonuses and delay rentals payable thereunder.

Section 19 of Chapter 286, Session Laws of 1941, the law at the time the plaintiff entered into the contracts for deed, authorized the owner or his successor in interest to repurchase real estate forfeited to the county under tax deed proceedings. Howard Heggen contends that he purchased these sections of land for himself under this statute.

The trial court found that the description "Howard Heggen for Estate of Neils Heggen" as grantee in the contracts for deed was "merely descriptive de personae as to Howard Heggen and as for him color of title."

It should be noted that, although the estate is referred to in the description of the vendee in the body of both instruments, the contract relating to the Northwest Quarter of Section 15 was signed "Howard Heggen" as party of the second part without reference to any estate. The trial court found that the inclusion in the description of the grantee of the words "For the Estate of Neils Heggen" was the result of a policy adopted by McKenzie County in cases involving redemption or repurchase of land to attempt to restore the title to the former or last owner of record. This finding is supported by the testimony of the former County Auditor.

Some authority could be cited in support of the trial court's conclusion. See: Scott v. Cain, 77 Ga.App. 826, 50 S.E.2d 99, 103; Dorsey v. Rankin, 43 Ga.App. 12, 157 S.E. 876, 877; Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Wallace, 346 Pa. 532, 31 A.2d 71, 80, 156 A.L.R. 1.

In order to arrive at this conclusion, however, it is necessary that the parol evidence or testimony of Howard Heggen be considered, for without his explanation or without actual knowledge of his alleged intentions, anyone examining the records in the county auditor's office would have been justified in concluding that Howard purchased these two quarters for the benefit of the heirs of the deceased former owner, Neils Heggen, as the contracts read: "Howard Heggen for the Estate of Neils Heggen." In fact, deeds later executed in the name of the deceased Neils Heggen were sent to Howard Heggen and were not returned or rejected by him, although he did not record them.

Our court in a 1958 decision held that although title was lost while the county had a tax deed to the land, the acceptance by the county of money for redemption or re-

purchase reinvested the heirs of the former owner with title to the property, even though the county issued the deed to the deceased former owner on payment of the redemption or repurchase money. See Chapin v. Letcher, 93 N.W.2d 415 (N.D. 1958).

In *Chapin* we quoted with approval from Frandson v. Casey, 73 N.W.2d 436 (N.D. 1955), as follows:

Where a person who has no right to redeem or repurchase under Sections 57–2818, NDRC 1943 or 57–2819, NDRC 1953, Supp., furnishes the money to redeem or repurchase land forfeited to the county for taxes, and the evidence discloses that such redemption or repurchase was made for the benefit of the estate of a deceased person, who held the record title prior to the tax forfeiture, the acceptance of the money tendered for the redemption or repurchase in accordance with the thirty day notice provided by the statute, reinvests the heirs of said deceased with the title to the land held by them as tenants in common upon the decease of their ancestor, and the issuance of a deed by the county subsequent thereto is but a ministerial act, and the issuance of the deed evidencing the redemption or repurchase in the name of the deceased owner does not affect the tenancy in common of the heirs of said deceased created by the acceptance of the money required to redeem or repurchase from the county.

Frandson v. Casey, supra, Syllabus 3.

Under these circumstances, Howard's subjective intent, disclosed now through parol evidence, should not prevail over the records made at the time possession was taken. It is contended that Howard manifested his hostility to the heirs by entering onto these two tracts as the tenant of the county. No such leases are in evidence. All we have before us is Howard's testimony that he leased the tracts from the county the first one or two years he was in possession of them. There is no evidence

that the fact was communicated to the heirs at that time. We therefore hold that his taking was not unequivocal enough to adequately warn the other heirs of his adverse intentions.

The defendants argue that Howard Heggen initiated certain heirship proceedings, that the proceedings relate to these lands, which were specifically set out in the inventory which he signed, and that Howard's actions support their view that from the very beginning he intended to and did acquire the property as a cotenant. They say that this action is an attempt on the part of Howard to collaterally attack the decrees which ascertain the heirs and their interests and that this cannot be done.

In support thereof the defendants refer us to § 27–07–39, N.D.C.C., which reads as follows:

The proceedings of a county court in the exercise of its jurisdiction shall be construed in the same manner and with like intendments as the proceedings of courts of general jurisdiction, and to its records, orders, and decrees there shall be accorded like force, effect, and legal presumptions as to the records, orders, judgments, and decrees of courts of general jurisdiction.

■ Pertinent also is § 30–22–11, which reads:

The decree entered in a proceeding to determine heirship is final and conclusive upon all:

1. Creditors of the decedent;

2. Heirs and other persons and their successors or assigns; and

3. Parties named in the proceeding, including the unknown persons respondent.

Upon the entry of such decree, a rehearing may be granted or an appeal taken in the manner provided in this title, but no other proceedings which would affect

the property described in the decree shall be entertained by the county court.

This is not an appeal from the decrees of the county court.

■ In Jensen v. Schwartz, 90 N.W.2d 716 (N.D.1958), Syllabus 4, this court said:

The judgment rendered by a court of general jurisdiction having jurisdiction of the parties and subject matter imports absolute verity as long as it stands.

We believe that this rule defeats all of the contentions of the plaintiff in support of his plea that he be awarded full title to these premises, including those which he has stated and which we have considered but have not discussed.

■ As the decrees were entered in 1954 and this action was commenced in 1961, less than the statutory period to establish title by adverse possession had run. The decrees, therefore, import absolute verity in this case.

The plaintiff's case for full title to Lots 1 and 2 of Block 6 of the original townsite of Rawson, is based upon facts quite similar to those pertaining to the Southeast Quarter of Section 10 and the Northeast Quarter of Section 15. We hold that the plaintiff has failed to establish that he is entitled to more than an undivided ⅚ interest therein, and that therefore the defendants are entitled to the other undivided ⅖ therein as their interests appear.

We are in accord with the trial court in its finding that neither the plaintiff nor the answering defendants have been in actual and open possession of Lots 7 and 8 of Block 2 of the original townsite of Rawson; but, as the decrees establishing heirship have determined the interests of the parties herein and as these decrees have not been appealed from, the determination of the interests of the parties therein is conclusive, adverse possession for the statutory period not having been established thereafter.

■ Conveyance by Glen Humphrey of his interest to his daughters was not champertous, contrary to the plaintiff's contention.

Our statute on champerty reads as follows:

12-17-14. Buying pretended titles—Misdemeanor.—Every person who buys or sells or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof, for the space of one year before such grant, conveyance, sale, promise, or covenant is made, is guilty of a misdemeanor.

North Dakota Century Code.

As the plaintiff held possession as a cotenant and not adversely, his possession is deemed possession by the cotenants and their heirs. The conveyance here being by an heir of a cotenant, it cannot be said that the conveyance was made by someone not in possession.

The judgment of the trial court is therefore reversed, and this case is remanded with instructions to the trial court to enter a new judgment consistent with this opinion, awarding plaintiff an undivided ⅚ interest and the defendants together an undivided ⅖ interest as their interests appear herein in the four quarter sections of land less the railway right of way and in the four lots in the original townsite of the village of Rawson. Notwithstanding the previous statements contained in this opinion concerning the interests of the defendants Glen Humphrey, Louise Humphrey McManus, also known as Lois McMcManus, and Marion Humphrey Howard, the undivided 1/21 interest of Glen Humphrey having been quitclaimed to his

daughters Louise Humphrey McManus and Marion Humphrey Howard, their interests are thereby increased from a 1/21 interest each to a 1/14 interest each in the entire property.

The trial court is instructed, further, to take additional testimony if necessary and thereafter make its determination of the defendants' application for a partition of the property or for a sale thereof and for an accounting.

TEIGEN, C. J., and STRUTZ, J., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.

KNUDSON, Judge (dissenting).

Neils (Niels) Heggen, a resident of the State of Wisconsin, died intestate on September 28, 1930, leaving surviving him as his heirs at law his widow, Maren Heggen, and a son, John Heggen. At the time of his death he was the fee owner of various tracts of land in McKenzie County, North Dakota, including the tracts of land involved in this litigation, namely: the Southwest Quarter of Section 11, and the Northwest Quarter of Section 15, Township 150, Range 101; the Northeast Quarter of Section 15, Township 150, Range 101; Lots 1 and 2 of Block 6 of the Original Townsite of Rawson, North Dakota; and an undivided one-half interest in Lots 7 and 8 of Block 2 of the Original Townsite of Rawson, North Dakota.

John Heggen, also a resident of the State of Wisconsin, died intestate on September 21, 1936, leaving surviving him as his sole heirs at law his children, Stella Humphrey, Neil Heggen, Howard Heggen, Mabel Leer Marentette, James Heggen, and Norman Heggen, and his grandchildren, Lois McManus and Marion Howard, the children of Inga Humphrey, who predeceased him on June 1, 1932. At the time of his death John Heggen was the fee owner of the Southeast Quarter of Section 10, Township 150, Range 101, and an undivided one-half interest in Lots 7 and 8, Block 2, Original Townsite of Rawson, North Dakota, and his undivided one-half interest in the land inherited from Neils Heggen.

Neither of these estates was probated in the County Court for McKenzie County, although in 1936 there was a proceeding for the appointment of Sever Leer as Special Administrator to act in connection with the programs of the Agricultural Adjustment Act, and in 1937 a petition to establish heirship in the estate of Neils Heggen was brought by Howard Heggen, but this proceeding was not completed beyond the publication of the citation and was abandoned.

Maren Heggen, the widow of Neils Heggen, also a resident of the State of Wisconsin, died intestate on January 23, 1940, leaving surviving her as her sole heirs at law the living children of John Heggen and his grandchildren hereinbefore named.

The record is not clear as to how these lands were operated during the 1930's, or by whom, although it appears that Mabel Leer and her husband, Sever Leer, operated these lands during the middle '30's and the latter part thereof. These people are also known by the surname, Marentette. They left for the West Coast in December, 1941, and have ever since continued to live there.

Because of the severe economic depression and the extreme and continuous drouth that occurred during the decade of the 1930's, with the accompanying low prices and poor crops bringing general distress to all, the taxes on the lands involved in this litigation had not been paid for the year 1930 and subsequent thereto, which condition prevailed about the whole State.

To ease the distressed landowners, the North Dakota Legislature from time to time

enacted moratorium Acts suspending the issuance of tax deeds to the County to October 1, 1939. Session Laws 1933, Chapter 264; Session Laws 1935, Chapter 277; and Session Laws 1939, Chapter 236.

Because of these moratorium Acts it was not until October 1, 1940, that Auditor's Tax Deeds were issued conveying to McKenzie County the Southwest Quarter of Section 11 and the Northwest Quarter of Section 15. After the County acquired tax title Norman Heggen rented these tracts for the year 1941, and Norman Heggen and Howard Heggen rented these tracts for the year 1942 from the County.

The Legislature also provided for the repurchase of real estate forfeited to the County under tax deed proceedings by the owner or his successor in interest. These Acts provided that the owner, or his successor in interest, shall have the right to repurchase all lands forfeited to the County for non-payment of taxes for cash or upon contract for deed upon a down payment and the balance payable in installments spread over a period of years.

§ 19. RIGHT OF OWNER TO RE-PURCHASE.] The owner, or his successor in interest, shall have the right to repurchase all real estate heretofore or hereafter, forfeited to the county under tax deed proceedings, so long as the tax title thereto remains in the county. Such purchase may be for cash or upon contract for deed made by and between the Board of County Commissioners and the owner, or his successor in interest. The consideration of such contract shall include: (1) The total amount required to be paid in the notice to effect a redemption. (2) The total amount of all subsequent taxes with interest, penalties and costs. Provided that if the fair market value of such property at the time of the repurchase thereof, is less than the total amount to be paid to effect a redemption, together with all subsequent taxes, interest, penalties and costs, the Board shall fix a fair and just sales price

for such property, and shall require the owner to pay at least twenty-five (25%) percent of the total contract in cash and the remainder shall be payable in not to exceed ten (10) annual equal installments as the Board of County Commissioners may determine, which installments shall bear interest at four (4%) percent per annum until paid in full. Such contract shall further provide that if the vendee or his successor in interest, fails to pay one or more of the installments, when due with interest, the Board of County Commissioners may cancel such contract and thereupon all payments and improvements made by the vendee or his successor in interest, shall be forfeited to the county as liquidated damages for breach of contract unless otherwise expressly provided. That upon the full performance of such contract, the county shall execute and deliver a deed to the purchaser which shall be executed in the same manner as tax deeds and shall have the same legal effect as prescribed by the terms of this Act.

Session Laws 1941, Chapter 286.

Howard Heggen, under the provisions of the Act then in force, entered into a contract for deed, dated February 13, 1943, with the County for the repurchase of the Southwest Quarter of Section 11, and a contract for deed, dated January 27, 1943, for the repurchase of the Northwest Quarter of Section 15, Township 150, Range 101. The contract for deed to the Southwest Quarter of Section 11 named the contract purchaser as "Howard Heggen for the Estate of Neils Heggen" and was signed in the following fashion: "Neils Heggen Estate by Howard Heggen." The contract for deed to the Northwest Quarter of Section 15 named the contract purchaser as "Howard Heggen for the Estate of Neils Heggen" and was signed in the following fashion: "Howard Heggen."

In the body of his written offer to the County for the purchase of the South-

west Quarter of Section 11 he recited, "I am one of the heirs of the Neils Heggen Estate." This offer was signed, "Neils Heggen Estate by Howard Heggen."

Howard Heggen went into possession of these tracts of land and began to farm the same. He completed the payments required under the Contracts for Deed on or before November 1, 1944, on which date the County issued two deeds conveying these tracts of land to "Neils Heggen," and mailed the deeds to Howard Heggen. These deeds were not recorded in the office of the Register of Deeds.

The record title to the Southeast Quarter of Section 10 and the Northeast Quarter of Section 15 remained in the name of John Heggen and Neils Heggen, respectively, as no tax deed proceedings were completed conveying these tracts of land to McKenzie County for nonpayment of the delinquent 1930 taxes because of the moratorium Acts adopted at various times during the 1930's by the North Dakota Legislature suspending the issuance of tax deeds to the County upon expiration of the period of redemption. See Session Laws 1933, Chapter 264; Session Laws 1935, Chapter 277; and Session Laws 1939, Chapter 236.

The Legislature also adopted tax relief Acts to provide for the contract settlement of delinquent taxes, permitting payment in installments, by any person owning real estate upon which taxes are delinquent prior to December 1, 1936. Session Laws 1937, Chapter 240. This Act was amended by Session Laws of 1939, Chapter 227, to provide for the contract settlement of all delinquent taxes, permitting payment in installments, for the year 1937 and prior years. The relative parts of Chapter 227 are as follows:

§ 1. (1) All delinquent real and personal property taxes, except as hereinafter provided, for the year 1937 and prior years, together with accrued interest and penalties thereon, shall be cancelled and discharged in full upon the payment of the full amount of the original tax; provided that all payments hereunder must be made on or before March 1, 1940; * * *.

\* \* \* \* \* \*

(3) The Board of county commissioners may, upon application of any person owning property upon which taxes, either real or personal, are delinquent for the year 1937, or prior years, permit the payment of any such delinquent taxes, except special assessments levied for local improvements and special assessments levied by drainage or irrigation districts, on the reduced amounts hereinbefore provided for, in not to exceed ten (10) annual installments, without interest, at the rate of 4% per annum from April 1st, 1939, payable on or before October 15th of each year, provided that ten per cent (10%) of the principal is paid when the extension is allowed, ten per cent (10%), on the following October 15th, and ten per cent (10%) on each succeeding year until the amount is fully paid; and upon the payment in full of such installments, with accrued interest, such delinquent taxes shall be cancelled and discharged of record.

Under the provisions of this Act Howard Heggen entered into a contract on November 6, 1940, with the County for the payment of the delinquent taxes for the years 1930 to 1937, both inclusive, on the Southeast Quarter of Section 10, amounting to the sum of $380.47, and, at the same time, in accordance with the provisions of the Act, he paid the 1938 and 1939 taxes, in the aggregate sum of $128.56, and thereafter he continued to make the payments on the contract until December 7, 1943, at which time he made the final payment on the contract. All tax receipts were issued to and in the name of Howard Heggen.

Norman Heggen entered into a similar contract on October 23, 1940, for the payment of the delinquent taxes for the years 1930 to 1937, both inclusive, on the North-

east Quarter of Section 15, in the sum of $746.22, and at the same time he paid the 1938 taxes and the 1939 taxes in the aggregate sum of $186.72. It appears that Norman Heggen made no further payments on this contract and that Howard Heggen assumed this contract as all subsequent payments, beginning with those due in the year 1941, were paid by Howard Heggen, and thereafter he continued to make the payments on the contract and the current taxes as they became due, until December 7, 1943, at which time he made the final payment on the contract. All tax receipts subsequent to the receipts issued on October 23, 1940, were issued to and in the name of Howard Heggen.

On entering into the contracts with the County for the payment of the delinquent taxes Howard went into possession and occupied the two tracts of land in the spring of 1941, when he began to farm these tracts and live thereon. There are farm buildings on the Northeast Quarter of Section 15.

Howard Heggen has been in the sole and continuous possession of all four of these tracts of land up to the present. He has made valuable improvements by the removal of rock, by the repair and upkeep of fences, by the repair and upkeep of the buildings, and by the erection of a Quonset, at a cost of about $5,000, in the year 1954.

In 1953 Howard Heggen consulted an attorney regarding proceedings to clear the title to these tracts of land. Two proceedings were then instituted for a decree establishing heirship and determining the right of succession to the property, one each for the estates of Neils Heggen and John Heggen, wherein Howard Heggen was the petitioner, and decrees were entered in each estate determining the heirs to be Howard Heggen, Norman Heggen, Neil Heggen, Stella Heggen Humphrey, Mabel Heggen Marentette, James Heggen, and each entitled to an individed one-seventh interest in and to the real property; and Glen Humphrey, surviving husband of Inga Olena Heggen Humphrey, Lois Humphrey McManus, and Marion Humphrey Howard, and each entitled to an undivided one-twenty-first interest in and to the real property.

It has no bearing on the outcome of this case, but Glen Humphrey, who is named one of the heirs in the above heirship proceedings, as the surviving husband of Inga Olena Heggen Humphrey, deceased, in fact did not inherit any interest in these lands as Inga predeceased her father, John, and also her grandmother, Maren, on June 1, 1932, and, therefore, Inga's children succeeded to her share on the death of John and Maren by right of representation under the laws of intestacy of the State of North Dakota.

The respective decrees establishing heirship were issued on March 10, 1954, and recorded in the Register of Deeds' office on March 16, 1954. Some time after the heirship proceedings were completed the attorney moved from Watford City. Mr. Heggen consulted another attorney concerning the nature of the proceedings that had been brought, and upon finding that these proceedings did not quiet title to the tracts of land in him he paid the fee of the attorney for the heirship proceedings under protest in writing, saying that he did not wish to have the land probated.

Mr. Heggen at about the same time, in the fall of 1953, sought to get quitclaim deeds from the other heirs of Neils Heggen and John Heggen. Norman Heggen, Neil Heggen, Stella Humphrey and James Heggen quitclaimed their interest in the tracts of land to Howard Heggen. But Mabel Leer Marentette, Glen Humphrey, Louise (Lois) Humphrey McManus and Marion Humphrey Howard did not quitclaim their interest to Howard.

Howard Heggen brought this action to quiet title in statutory form in August, 1961, against Mabel Marentette, formerly Mabel Leer; McKenzie County, North Dakota, a public corporation; Glen Humphrey; Louise Humphrey McManus, also known as Lois McManus; Marion Humphrey How-

ard; and all other unknown persons. McKenzie County defaulted but the other defendants named answered and counterclaimed wherein they generally denied allegations of the plaintiff's complaint and alleged that they together claimed a two-sevenths undivided interest in the property as tenants in common with Howard Heggen. In their counterclaim the defendants allege that the plaintiff and the defendants are the owners in fee simple and in the actual and lawful possession of all the real estate described in the plaintiff's complaint, and, in addition thereto, Lots 1 and 2 of Block 6 of the Original Townsite of Rawson, North Dakota, and Lots 7 and 8 in Block 2 of the Original Townsite of Rawson, North Dakota. They allege they acquired their title to lands as the heirs at law of Neils Heggen and John Heggen. They further allege that the plaintiff Howard Heggen has been in possession of the said lands and premises during the years 1954 to 1961 as a tenant in common, and is still in possession of said premises; that he has farmed the same and taken all the proceeds raised there during said years; answering defendants pray for a dismissal of the plaintiff's complaint and that the court order judgment on the counterclaim for a partition of the real property, and for an accounting between the parties. The plaintiff, in his amended reply to the counterclaim, denies that the defendants are the owners in fee simple of the land and alleges that he is the owner in fee simple and in actual and lawful possession of the said lands. As a further defense, plaintiff alleges that he has been in the open, actual, adverse and undisputed possession of said property under color of title for more than ten years and, therefore, has established a valid title in the laws provided by Section 47–06–03 of the North Dakota Century Code, as amended; and as a further defense plaintiff alleges that the cause of action set forth in said answer and counterclaim is barred by the laches of the defendant in that the cause of action of the defendant alleged in said answer and counterclaim accrued prior to August of 1943. Plaintiff further alleges that during all of said time neither the defendants nor any of their servants, agents, or assigns made any demand upon the plaintiff or his predecessors nor did the said defendants exercise any right of ownership of any part thereof during all of said time. Plaintiff further alleges that his predecessors or grantors have been in actual, open, adverse and undisputed possession of all of said property and have made improvements thereon, having paid all taxes levied against the property since that time.

The trial court found in favor of the plaintiff, and judgment was entered accordingly. Defendants have appealed from such judgment and have demanded a trial de novo in this court.

Plaintiff contends that the defendants are not entitled to trial de novo as their demand was contained only in the notice of the appeal. However, this contention is not correct because the demand for a trial de novo is contained within the order settling the statement of the case and also in the certificate of Judge as to the correctness of the transcript and identification of exhibits. See Syllabus 1, Renner v. Murray, 136 N.W.2d 794 (N.D.1965).

The trial court, in its Findings of Fact, found that:

4.

That Plaintiff, Howard Heggen, entered into possession of the SE¼ of Section 10 and the NE¼ of Section 15, all in Township 150 North, Range 101 West in the spring of the year 1941. That Plaintiff repurchased said lands as a preferred purchaser, for himself and no others. That Plaintiff, Howard Heggen, repurchased said premises by paying all real estate taxes levied and assessed against said lands for all previous years to and including the year 1930. That Plaintiff has paid all real estate taxes levied and assessed against said lands for each and every year since the year 1930 except real estate taxes for the year

1962 not yet due. That Plaintiff, Howard Heggen, has been in continuous possession of the SE¼ of Section 10 and the NE¼ of Section 15, all in Township 150 North, Range 101 West since the spring of the year 1941 and has continuously claimed a full fee simple interest therein. That he has cultivated and worked said land since the spring of the year 1941. That he repaired and maintained an old fence, picked rock, raised small grains upon the cultivated land, purchased, paid for and erected a 32 foot by 72 foot quonset building upon the land, leased said land for oil and gas on the 11th day of April, 1951; that he received and retained all bonus and delay rentals payable thereunder and that he and his family actually moved upon the land in the spring of the year 1941, living in and occupying said land and buildings and making his home thereon until the year 1950 when Plaintiff moved his residence to Alexander, North Dakota.

5.

That Plaintiff, Howard Heggen, entered into possession of the SW¼ of Section 11 and the NW¼ of Section 15, all in Township 150 North, Range 101 West in the spring of the year 1941. That for the years 1941 and 1942, Plaintiff, Howard Heggen was in possession and farmed said lands as tenant of McKenzie County, North Dakota. That in the year 1943, Plaintiff, Howard Heggen redeemed said land from McKenzie County, North Dakota, continued in possession and ever since the year 1943 has paid all real estate taxes levied and assessed against said lands, and has continuously claimed a full fee simple interest thereon, under color of title. That he has cultivated and worked said land continuously since the year 1941. That he has picked rock, repaired and maintained fences, raised small grains upon the cultivated land and has leased the land for oil and gas on the 11th day of

April, 1951 retaining all bonuses and delay rentals payable thereunder.

6.

That the Court finds that the policy of McKenzie County, North Dakota in cases involving redemption or repurchase of lands forfeited to or acquired by McKenzie County for non-payment of taxes was to attempt to restore the title to the former owner or last owner of record. That the designation of the vendee in the Contract for Deed in Redemption of Real Estate (Exhibit 12) as "Howard Heggen for the Estate of Neils Heggen" and the designation of the vendee in the Contract for Deed in Redemption of real estate (Exhibit 13) as "Howard Heggen for Estate of Neils Heggen" purporting to sell and convey the SW¼ of Section 11 and the NW¼ of Section 15, Township 150 North, Range 101 West, respectively, was consistent with such policy. That the designation of the vendee in such contracts is merely descriptive de personae.

7.

That the Contract for Deed in Redemption of Real Estate (Exhibit 12) dated February 13, 1943 by and between the Board of County Commissioners of McKenzie County, Contract Vendor and "Howard Heggen, for the Estate of Neils Heggen," Contract Vendee, purporting to sell and convey the SW¼ of Section 11, Township 150 North, Range 101 West, describes the land sought to be conveyed with certainty, is merely descriptive de personae as to Howard Heggen and as for him color of title.

8.

That the Contract in Redemption of Real Estate (Exhibit 13) dated January 27, 1942 by and between the Board of County Commissioners of McKenzie County, North Dakota, Contract Vendor and "Howard Heggen for Estate of Neils Heggen," Contract Vendee, purporting

to sell and convey the NW¼ of Section 15, Township 150 North, Range 101 West, describes the land sought to be conveyed with certainty, is merely descriptive de personae as to Howard Heggen and as for him color of title.

### 9.

That the Plaintiff, Howard Heggen, repurchased the Lots 1 and 2, Block 6 of the ORIGINAL TOWNSITE of the Town of Rawson, McKenzie County, North Dakota, in the year 1940 by paying all taxes levied and assessed against said premises for all previous years to and including the year 1930. That Plaintiff, Howard Heggen has paid all real estate taxes levied and assessed against said premises for each and every year since the year 1930, except real estate taxes for the year 1962, not yet due. * * * That Plaintiff has been in continuous possession of said Lots 1 and 2, Block 6 to the extent possible, since the year 1940, has continuously claimed a full fee simple interest therein, derived and retained approximately $25.00 gross income therefrom since the year 1940 and made such use of it as was possible.

### 10.

That the Court has drawn certain inferences from facts proven, namely;

(a) That the SE¼ of Section 10, SW¼ of Section 11; and N½ of Section 15 all in Township 150 North, Range 101 West and the Lots 1 and 2, Block 6 of the ORIGINAL TOWNSITE of Rawson, McKenzie County, North Dakota was abandoned by the heirs of Neils Heggen, deceased and John Heggen, Deceased prior to the time of repurchase or redemption by Howard Heggen.

* * * * * *

(c) That the heirs of Neils Heggen, Deceased and John Heggen, Deceased, including the Answering Defendants, or their predecessors in interest had abandoned the property described in the Plaintiff's Complaint and in the Answering Defendant's Counterclaim prior to repurchase or redemption by Plaintiff, Howard Heggen.

(d) That the heirs of Neils Heggen, Deceased and John Heggen, Deceased, including the Answering Defendants, or their predecessors in interest had knowledge of the entry into possession of the lands described in Plaintiff's Complaint and Defendant's Counterclaim, at the time he entered into possession, acquiesced in allowing Plaintiff, Howard Heggen, to pay all taxes, levied and assessed against said lands, pay all claims and expenses incident thereto, assume all risks, make and pay for improvements and to keep and retain all income, if any, realized therefrom. That the Answering Defendants never offered to reimburse Plaintiff, Howard Heggen for any such outlay or expenses by him made and incurred, never made demand upon Plaintiff for an accounting, never offered contribution and have made no tender to Plaintiff of any part or all of such outlay or expense by him made and incurred. That the Court finds as a fact that the Answering Defendants have knowingly waived any rights they may have had by lapse of an unreasonable time.

(e) That the proceedings to Establish Heirship and Succession to Real Estate commenced in the year 1954 were instituted to clear record title and were not instituted by Plaintiff for the purpose of, nor were they in any sense proceedings to establish or recognize the title of any of the Defendants. That the adverse possession of Plaintiff as to the SE¼ of Section 10 and the NE¼ of Section 15, Township 150 North, Range 101 West was a fact accomplished prior to commencement of said proceedings and that the adverse possession of Plaintiff as to the balance of the land was not tolled or interrupted by instituting such proceed-

ings. That the instituting of such actions was contrary to Plaintiff's instructions to his attorney; not in accordance with his wishes and of no force, effect, or validity.

11.

That none of the Defendants, or their predecessors in interest, has been in possession of the SE¼ of Section 10, NE¼ of Section 15, Township 150 North, Range 101 West or the platted lots in the village of Rawson, McKenzie County, North Dakota within twenty (20) years prior to the commencement of this action.

12.

That none of the Defendants, or their predecessors in interest have been in possession of the SW¼ of Section 11 or the NW¼ of Section 15, Township 150 North, Range 101 West within ten (10) years prior to the commencement of this action.

\* \* \* \* \* \*

14.

That the cause of action of the Answering Defendants, and each of them accrued more than ten (10) years prior to the commencement of this action by Plaintiff.

15.

That the Defendants have not been seized or possessed of the real property described in the Complaint and Defendant's Counterclaim nor occupied said property at any time and are bound by the provisions of Section 28–01–04 and Section 28–01–07 North Dakota Century Code.

16.

That Plaintiff, Howard Heggen has been in the actual, open, adverse and undisputed possession of the SW¼ of Sec-

tion 11 and the NW¼ of Section 15, Township 150 North, Range 101 West under color of title for a period of more than ten (10) years next preceding the date of commencement of this action and has paid all taxes and assessments legally levied against said lands.

17.

That Plaintiff, Howard Heggen, has been in actual, open, adverse and undisputed possession of the SE¼ of Section 10, less railroad right of way, and the NE¼ of Section 15, Township 150 North, Range 101 West and the Lots 1 and 2, Block 6 of the ORIGINAL TOWNSITE of the Village of Rawson, McKenzie County, North Dakota, for a period of more than twenty (20) years next preceding the date of the commencement of this action and has paid all taxes and assessments legally levied against said lands.

18.

That the cause of action of the Answering Defendants, set forth in the Defendant's Answer and Counterclaim is barred by the laches of the Defendants or their predecessors in interest.

The defendants contend that the repurchase by Howard Heggen of the Southwest Quarter of Section 11 and the Northwest Quarter of Section 15 by contract for deed with the County was made as a cotenant with the other heirs at law of Neils Heggen and John Heggen. Both contracts named "Howard Heggen for the Estate of Neils Heggen" as the contract purchaser. The contract for deed to the Southwest Quarter of Section 11 was signed: "Neils Heggen Estate by Howard Heggen," and the contract for deed to the Northwest Quarter of Section 15 was signed: "Howard Heggen." Howard Heggen made a written offer to the County to purchase the Southwest Quarter of Section 11 in the body of which he recited, "I am one of the heirs of the Neils Heggen Estate," and the offer was signed: "Neils Heggen Estate by How-

ard Heggen." These contracts for deed were made pursuant to the provisions of the Session Laws of 1941, Chapter 286, § 19, wherein it is provided that:

> The owner, or his successors in interest, shall have the right to repurchase all real estate * * * forfeited to the county under tax deed proceedings, so long as the tax title thereto remains in the county. Such purchase may be made for cash or upon contract for deed made by and between the Board of County Commissioners and the owner, or his successor in interest. * * * That upon the full performance of such contract, the county shall execute and deliver a deed to the purchaser which shall be executed in the same manner as tax deeds and shall have the same legal effect as prescribed by the terms of this Act.

These contracts were made in January and February of 1943, and Howard Heggen entered into the possession of these lands and began to farm the land.

The County had acquired these lands by Auditor's Tax Deeds on October 1, 1940, and during the years 1941 and 1942 Howard Heggen farmed these lands as a tenant of McKenzie County. Howard Heggen contends that he purchased these lands for himself and that he has since that time occupied and used these lands as the owner thereof. He states that the statement in the contracts for deed referring to the Neils Heggen Estate was merely for the purpose of identifying himself as an heir of Neils Heggen and therefore entitled to repurchase these lands under the provisions of Chapter 286, § 19, supra, that thereunder he qualified as an owner, or as a successor in interest. The trial court found that the designation of the vendee in such contracts, "Howard Heggen for Estate of Neils Heggen," is merely descriptive de personae. In 26 C.J. S. Deeds § 99, subdivision f, relating to the grantee in a representative or official capacity it is said:

Words designating the representative or official character of the grantee may be, but are not necessarily, merely descriptio personae.

Words designating the representative or official capacity of the grantee may be only descriptio personae and will be construed accordingly, unless it can be inferred to the contrary from the instrument, especially where there is an absence of all proof tending to show the existence of a trust estate, and there is none created by the deed. Such words may not, however, be merely descriptive, and the grantee may take the title, not in his individual capacity, but in the capacity designated.

In determining whether a grantee takes individually, or in a trust, or representative capacity where words referring to him as a trustee or representative appear in the deed, it has been held or recognized that the court will apply applicable rules of construction to ascertain the purpose or intention, considering the instrument as a whole, reconciling repugnant parts if possible, and keeping in view the relative force and effect of the various clauses, and that it is proper to consider the trustee's declarations or admissions, the subsequent conduct of the person described as trustee, or the fact that his signature to a subsequent deed of the property by him is as an individual.

If there is no person in existence with authority or capacity to take as beneficiary, under a deed to persons as trustees, the title may be vested in them individually.

Robie v. Sedgwick, 35 Barb., N.Y., 319, affirmed 4 Abb.Ct.App.Dec. 73

The question arises whether the words "for the Estate of Neils Heggen" create a trust or a representative capacity for the benefit of the heirs of Neils Heggen, the quoted words not being merely descriptio personae.

There must, in order that there may be a valid deed, be a grantor having a legal existence who is capable of conveying and a grantee who is capable of taking and of holding in his own right or as a trustee.

26 C.J.S. Deeds § 13, p. 598.

A deed to the estate of a deceased person is void.

Nilson v. Hamilton, 53 Utah 594, 174 P. 624, Miners Nat. Bank of Wilkes Barre v. Wineski, Com.Pl., 34 Luz.Leg.Reg. 436.

In 26 C.J.S. Deeds, § 24b, page 632, it is said:

In order to pass title a deed must specify a grantee with certainty so as to identify him from the rest of the world, although the description need not be by name or in any particular clause.

In the footnote to this section two cases are cited from Florida and Georgia holding that a deed to the estate of a deceased person is insufficient.

Our court in Beddow v. Flage, 22 N.D. 53, 132 N.W. 637, said, at syllabus 2, as follows:

Plaintiff took an option contract for the purchase of land, running to "W. E. Beddow, Cashier of the C. Bank of Waukon, Iowa." He complied with its terms, and, on the refusal of the vendor to convey, brought suit in his own name. *Held,* that among the different rules applicable to contracts so made the most favorable to the appellant is that prima facie the words, "cashier, etc." are descriptive of the person, and do not constitute a representation of the capacity in which the plaintiff acted in making the contract, and that a demurrer to a complaint on such a contract upon the ground that the action is not brought in the name of the bank was properly overruled.

At the time Howard Heggen entered into the contracts for deed for the purchase of the Southwest Quarter of Section 11 and the Northwest Quarter of Section 15 the entire title to the property was in the County, the interest of the cotenants in the property having been terminated by the issuance of tax deed to the County. In Mr. Justice Burke's concurring opinion in Severson v. Simon, 110 N.W.2d 289 (N.D. 1961), he said:

Upon the issuance of this tax deed the entire title to the property passed to the county. [Citations.] The interest of each of the cotenants in the property was thus terminated and the cotenancy ended.

He went on further to say:

Where a cotenancy has ended a former cotenant may acquire sole title to the property at tax sale in the absence of fraud, collusion or other inequitable conduct. [Citations.]

In Syllabus 2 of Frandson v. Casey, 73 N.W.2d 436, we said:

A valid tax deed acquired by a county clothes the grantee with a new and complete title in the land, under an independent grant from the sovereign authority, which bars and extinguishes all prior titles and encumbrances of private persons whether of record or otherwise.

We are of the view that plaintiff has sustained his contention that he purchased this land on his own behalf and not for the estate, and the Court below is correct in holding that the reference to the Neils Heggen Estate was merely descriptive personae.

Upon the plaintiff completing the payments required under the contracts for deed the County issued a County Deed to these tracts of land naming Neils Heggen as the grantee. For the reasons stated above, it is our opinion that the grantee having been deceased for some thirteen years that there was no grantee in esse that could take the title, as a deed to a deceased person is a nullity.

In the absence of a statutory modification of the common-law rule, the grantee must be in esse, * * *.

26 C.J.S. Deeds § 13; Stainsby v. Schallenkamp, 72 S.D. 385, 34 N.W.2d 832.

Howard Heggen entered into the possession of the Southeast Quarter of Section 10 and the Northeast Quarter of Section 15 in the late fall of 1940 or the spring of 1941, under a contract for the settlement of delinquent taxes under the provisions of the Session Laws of 1939, Chapter 227, which provided for the contract settlement of delinquent taxes for the years 1937 and prior years by any person owning property, payable in ten annual installments at four per cent interest. The contract for the Southeast Quarter of Section 10 was made in the name of Howard Heggen and was dated November 6, 1940, and the contract for the Northeast Quarter of Section 15 was in the name of Norman Heggen, and dated October 23, 1940. However, as we have heretofore stated, Norman abandoned his contract and it was assumed by Howard, who made all the payments required under such contract for the year 1941 and subsequent years thereafter. The statute also provided that the taxes for the years 1938 and 1939 be paid in full at the time of entering into the contract. The amount of the delinquent taxes on the Southeast Quarter of Section 10 for the years 1930 and subsequent, through the year 1937, amounted to $380.47, and the 1938 and 1939 taxes amounted to $128.56, for a total of $509.03. The amount of the delinquent taxes on the Northeast Quarter of Section 15 for the years 1930 and subsequent, through the year 1937, amounted to $746.22, of which Norman paid $72.91, and Howard paid $673.31. Norman also paid the 1938 and 1939 taxes on October 23, in the sum of $186.72. The record does not disclose whether Howard reimbursed Norman for the payments made by him after Howard assumed the contract. All of the tax receipts for the payment of the delinquent taxes and for the current taxes on both tracts of land for each of the subsequent years were issued in the name of Howard Heggen. The record shows that Howard entered into the immediate possession of these lands upon entering into these contracts and he has been in the actual, open, adverse and undisputed possession of the land for a period of more than twenty years, commencing with October and November of 1940.

Upon the death of Neils Heggen on September 28, 1930, and the death of his son, John Heggen, on September 21, 1936, and the death of his widow, Maren Heggen, on January 23, 1940, the six surviving children of John Heggen each succeeded to a one-seventh interest in the land, and the two grandchildren of John Heggen each succeeded to a one-fourteenth interest in the land at the time of the death of the last decedent. North Dakota Century Code, § 56-01-04. They succeeded to the title to the real property as tenants in common. Stevahn v. Meidinger, 79 N.D. 323, 57 N.W. 2d 1. As coowners each had a right to enter upon a common estate and take possession of the whole thereof, subject only to equal rights of his companions in interest. Stevahn v. Meidinger, supra. Possession by one cotenant is consistent with the record title and is presumed to be subordinate to the rights of all other tenants. Ildvedsen v. First State Bank of Bowbells, 24 N.D. 227, 139 N.W. 105. Before possession of one cotenant can become adverse, the cotenant in possession must give notice to the other cotenants, either directly or by course of conduct in direct hostility to their claims so as to show an ouster of the rights of such cotenants. Stoll v. Gottbreht, 45 N.D. 158, 176 N.W. 932.

Here there is no claim that Howard Heggen ever gave direct notice to his cotenants that he made any claim adverse to their interests, however the contention is that the character of his possession was such that he gave notice to his cotenants that his possession was adverse to them so as to show an ouster of the rights of the cotenants from the inception of his possession.

We have examined the record in this case and the evidence adduced as to the character of the possession by Howard Heggen from his entry on these lands in the fall of 1940 or in the spring of 1941. The acts of Howard Heggen during this time, paying all the taxes, taking all the crops, building and making repairs to the buildings and fences, constructing a Quonset at a cost of $5,000, removing rock, are all consistent with an adverse holding on his part, and are sufficient to constitute an ouster of the cotenants. He paid all the taxes delinquent from 1930 through 1939 in the amount of $1,441.97, which accrued prior to the time that he took possession, and the other heirs never offered to make or made any contribution for the reimbursement to him of the payment of these taxes. In paying the taxes, both delinquent and those accruing annually during his possession, he demanded that the tax receipts be made to him personally, and all tax receipts were issued in his name. He listed the land with the County Agricultural Stabilization and Conservation Committee and named himself as owner-operator. Friends and neighbors testified that Howard Heggen held himself out as the owner of the land.

There is nothing in the record to indicate that Howard Heggen ever acknowledged that any of the other heirs had any interest or claim to the land, and none of the other heirs made any claim to the land during the time of the possession of Howard Heggen from 1941 until they answered his complaint in the present action in November of 1961.

While the record is not too clear, it appears that Mrs. Mabel Leer Marentette and her husband, and Neil Heggen, farmed these lands through the 1940 farming season, when they discontinued their farming operations. It was at this time, on October 1, 1940, that the County acquired tax title to the Southwest Quarter of Section 11 and the Northwest Quarter of Section 15, and leased these lands to Howard Heggen, and at about the same time that Howard Heggen and Norman Heggen entered into the contracts for the payment of delinquent taxes on the Southeast Quarter of Section 10 and the Northeast Quarter of Section 15 in October and November, 1940. The following fall, during the month of December, 1941, Mrs. Marentette and her husband left for the West Coast, where they have continued to reside since that time. They did not pay any taxes on the land during their tenure and presumably kept the proceeds from the land for themselves. No doubt this income was small because of the low prices and drouth and did little more than permit them to eke out a subsistence. Apparently, after failing to make a success of the farming venture they decided to quit and abandoned the farm. They were in the community at the time Howard went into possession.

Howard's possession was not permissive at its inception as he was not in possession of the land prior to his entry on the Southwest Quarter of Section 11 and the Northwest Quarter of Section 15 in the spring of 1941 as a tenant of McKenzie County. Nor was he a tenant or in possession of the Southeast Quarter of Section 10 or the Northeast Quarter of Section 15 prior to entering into the contracts for the payment of delinquent taxes in October and November of 1940. His possession taken after his contracts with the County was hostile in its inception. Rovenko v. Bokovoy, 77 N.D. 740, 45 N.W.2d 492; Lindokken v. Paulson, 224 Wis. 470, 272 N.W. 453, 110 A.L.R. 910.

It has been broadly stated that possession must be hostile in its inception, and that a possession which is not in its origin made under claim of right of ownership cannot ripen into title. This, however, does not mean that a possession originally nonhostile can never become adverse, but merely that a possession must be or become hostile in character to start the statute running. In other words, a successful claimant must show either a possession hostile in its inception or an amicable possession which subsequently became hostile.

The possession must commence and continue under a claim of right to hold the land in fee against the true owner and all other persons. . . . It is one of the essential elements of adverse possession that such possession be under claim of ownership from its inception. Jacobi v. Jacobi, 345 Ill. 518, 178 N.E. 88.

Cited in 2 C.J.S. Adverse Possession, § 87.

When one enters avowedly as tenant in common with others, his possession is the possession of the others, as long as the tenancy in common is not disclaimed. But when a tenant in common is in possession of the whole premises and exercises acts of ownership of an unequivocal character, overt and notorious, and of such nature as, by their own import, to impart information and notice to his cotenants that an adverse possession and disseisin are intended against them, his possession is adverse. As between cotenants, the fact that A is in possession, or takes all the rents and profits, while B is not in possession and receives none of the rents and profits, is not of itself sufficient to start the running of the statute in favor of A. B has a right to assume that A holds possession, or otherwise utilizes the property, with a full recognition of the right of B to do the same if he so chooses, and B is guilty of no laches in failing to assert his rights. This rule is, however, one of evidence, merely, and it enters into the question whether the possession is in fact adverse. It is not a rule of law which forbids the application of the statute of limitations to persons who bear to each other the relation of tenants in common. But though the exclusive possession of one cotenant, or his exclusive receipt of the profits, does not of itself serve to show that his possession is adverse to the other or, as it is frequently expressed, that there is an ouster by him of such other, it has been quite occasionally asserted that the sole and uninterrupted possession and receipt of profits by one cotenant, continued for a long series of years, without any interruption or claim on the part of the cotenant, will justify a jury in inferring an actual ouster and adverse possession. The distinction appears to be in effect, that while the exclusive possession of one cotenant does not involve an ouster of the other so as to start the running of the statute, the fact that one cotenant is in sole possession for twenty, thirty, or forty years, without any claim being made by the other, justifies a finding that an ouster had taken place, "because men do not ordinarily sleep on their rights for so long a period, and a strong presumption arises that actual proof of the original ouster has become lost by lapse of time."

Tiffany Real Property, 3 Ed., Vol. 4, § 1185, p. 526.

In the present case the defendants permitted over twenty years to pass without making any claim of Howard Heggen for their interest or share in the land, and that such claim was not made until answering plaintiff's complaint in this action, and Howard Heggen had been in exclusive possession of the property for over twenty years, a presumption arises that an ouster had taken place.

The defendants contend that Howard Heggen, by the bringing of the heirship proceedings, acknowledged the claims and ownerships of all of the defendants and thereby interrupted the adverse possession before the statutory period of limitation had expired. Generally, the recognition of the owner's title by an adverse claimant interrupts the adverse possession. 2 C.J.S. Adverse Possession § 149.

Whether there has been an acknowledgement of the owner's title interrupting adverse possession depends in general upon the act or statement by the claimant as viewed in the light of the surrounding circumstances. 2 C.J.S. Adverse Possession § 149.

Here, Howard Heggen, according to his testimony, thought that his attorney was

clearing the title for him and, after consulting another attorney and being informed that the proceedings brought by his attorney were heirship proceedings, he paid the attorney's fee for the heirship proceedings under protest as he had not desired to probate the estate. At about the same time he had attempted to have the other heirs quitclaim any interest they might have to him and all but the named defendants did quitclaim their interest to him.

A decree of heirship relates only to the determination of who are the heirs at law of a decedent and is not a decree vesting title to the land. It does not create a new title. In 23 Am.Jur.2d Descent and Distribution, § 104, it is stated:

In a proceeding to determine heirship a court may properly adjudicate such matters as blood relationship to the decedent, community property rights, the validity of a marriage, or the validity of a separation agreement; but the decree merely declares who has the title of the decedent—it does not create title, and adverse claims involving the title cannot be litigated in such a proceeding.

Citing Semrad v. Semrad, 170 Neb. 911, 104 N.W.2d 338, that court said at Syllabus 3, on page 339, as follows:

The probate court in the settlement of an estate has jurisdiction to find and determine who are the heirs of a decedent, and to make incidental orders with reference thereto necessary to administer the estate. In so doing the court has no jurisdiction to determine the title to real estate, nor adverse claims involving the title to real estate.

The County Court has no jurisdiction to determine the title to real estate. In re Randalls' Estate, 77 N.D. 69, 40 N.W.2d 446. At most it may be said that Howard Heggen acknowledged those who were the heirs at law of Neils Heggen and John Heggen upon their death, and entitled to succeed to the decedents' property.

In order to constitute interruption of the continuity of the adverse possession there must be accompanied with the legal proceeding an actual ouster of the adverse claimant or a relinquishment of possession by him before the continuity of the adverse possession will be interrupted. Here, Howard Heggen has remained continously in possession—no court has issued a decree of ouster, nor has he relinquished possession.

The bringing of an action to quiet title to land by the person in possession thereof claiming title by adverse possession does not interrupt the adverse character of his possession.

Even if defendants' answer by a counterclaim challenges the title of the plaintiff and makes the claim of ownership of the property in the defendants, such answer does not interrupt the adverse character of the plaintiff in possession unless such counterclaim is successfully prosecuted and judgment awarded to defendant.

Chapin v. Letcher, 93 N.W.2d 415 (N.D. 1958).

The appointment of one in adverse possession as administrator of the record title owner does not necessarily suspend the adverse possession.

3 Am.Jur.2d, Adverse Possession, § 88, p. 171, citing Anderson v. Shelton, N.D., 92 N.W.2d 166, 73 A.L.R.2d 1108, § 11.

Howard Heggen's attempts to obtain a quitclaim deed from the other cotenants did not constitute an interruption of his adverse possession as he did not abandon his possession, nor is there anything in the record to indicate a recognition of another title in the cotenants, but, rather, the record shows that he was actuated by a desire to buy his peace or to protect his right to quiet enjoyment without litigious interference.

Unless circumstances show it to be a recognition of a superior title, claimant's purchase of an outstanding interest or title is not a fatal interruption of continu-

ity particularly when he merely buys his peace. It is held that a purchase of the owner's title is a prima facie interruption.

It appears to be the general rule that an adverse claimant may purchase an outstanding title or interest without necessarily interrupting the continuity of his adverse possession provided he does not abandon his possession. Thus, where claimant is actuated by a desire to buy his peace or to protect his right to quiet enjoyment without litigious interference his purchase of an outstanding title or claim is not considered to be a recognition of a superior right or a reliance on the purchased title by preference to his adverse claim, but is rather a joining of his purchased claims to his right by possession. Claimant may, under these circumstances, purchase an outstanding title either from the record owner or from a third person without losing his rights under his adverse claim.

However, the surrounding circumstances may show that such an act in fact involves the recognition of a superior title, in which case it will fatally interrupt the running of limitations in claimant's favor, as where claimant takes a deed for an estate less than a fee from the owner, or where he takes a deed for less than the whole tract claimed.

2 C.J.S. Adverse Possession § 151, p. 716.

The purchase of the interest one of several tenants in common is not necessarily an interruption of claimant's adverse possession.

An adverse claimant in possession does not necessarily abandon a holding under color of title or interrupt his adverse possession by purchasing an outstanding interest of a tenant in common of another alleged title. Under this principle there is no recognition of a superior title in another where the adverse claimant takes a deed from one of several coheirs of another claimant.

2 C.J.S. Adverse Possession, supra.

We find that the plaintiff Howard Heggen has been in actual, open, adverse and undisputed possession of the Southwest Quarter of Section 11 and the Northwest Quarter of Section 15, Township 150 North, Range 101 West, under color of title for a period of more than ten years next preceding the date of this action, has paid all taxes and assessments legally levied against said land. That said Howard Heggen has a valid title under the provisions of § 47–06–03, North Dakota Century Code.

We find that plaintiff Howard Heggen has been in the actual, open, adverse and undisputed possession of the Southeast Quarter of Section 10 less railroad right of way, and the Northeast Quarter of Section 15, Township 150 North, Range 101 West, and Lots 1 and 2, Block 6 of the Original Townsite of the village of Rawson, McKenzie County, North Dakota, for a period of more than twenty years next preceding the date of commencement of this action, and has paid all taxes and assessments legally levied against said lands. That said Howard Heggen has a valid title under the provisions of § 28–01–04, North Dakota Century Code.

The judgment of the lower Court should be affirmed.